Guthrie's Estate.

Argued November 26, 1935. Before FRAZER, C. J., KEPHART, SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Wm. B. McFall*, of *Dalzell, McFall & Pringle,* with him *Robert C. Downie,* for appellants.

*David A. Reed,* with him *Park J. Alexander,* for appellee.

OPINION BY MR. JUSTICE DREW, January 10, 1936:

Under the will of Florence H. Guthrie, a trust was created wherein George H. Howe and Clara H. Brown, brother and sister of testatrix, were made life tenants. It was directed that at their death the corpus of the trust should be divided among testatrix's nephews and nieces per capita. The Fidelity Trust Company (formerly The Fidelity Title & Trust Company), T. Howe Nimick and Francis S. Guthrie were named trustees in the will. Exceptions to their first and final account and to the decree nisi confirming that account were filed by two nieces

and a grandnephew of testatrix. The appeal is from the final decree dismissing the exceptions. The breach of trust alleged in the exceptions is that certain trust mortgages were held in the name of the corporate trustee without designation of the trust either upon the face of the mortgage or upon the public record thereof or in any other public manner. The question presented, therefore, is whether and to what extent any such breach of trust was committed, and whether or not these beneficiaries may require the trustees to account in cash for the money invested in the mortgages complained of.

The investments are of two kinds: (1) so-called "straight" mortgages—mortgages which were separately allotted to the Guthrie estate, and each of which was held wholly for the benefit of that estate; (2) mortgages in each of which a fractional interest was allotted to the Guthrie estate and other fractional interests were allotted to other estates. The latter type of investment is like the familiar mortgage pool, except that in this case the "pool," in which participation is allotted to several estates, consists of a single mortgage instead of a number of mortgages. It appears from the evidence offered in behalf of accountants that these mortgages were acquired by the trust company for the purpose of investing trust funds in them, and that the allotments to the Guthrie estate were ordinarily made within a few days after their acquisition—in some instances the date of allotment was the same as the date of the mortgage. Declarations of trust with respect to each mortgage were entered in at least three places in the books of the company's trust department: (1) in the "trust mortgage investment ledger," each sheet of which describes a particular mortgage held in trust by the company and shows the estate or estates for which the mortgage is held; (2) in the "individual trust ledger" sheets of the Guthrie estate, which record the various investments and other dispositions of funds of that estate; (3) in the "mortgage memorandum ledger," which shows all the mort-

gages held for the Guthrie estate. No designation of the company's trusteeship or of the existence of the other trustees appeared either on the face of the mortgages or on the public record thereof, the company being described therein as the mortgagee. The practice followed by the company in thus carrying these mortgages has been followed for over 40 years by trust companies generally in Allegheny County and elsewhere throughout the state, with the exception of Philadelphia County. It has been approved by the Orphans' Court of Allegheny County and by the Department of Banking of the Commonwealth. Inquiries by that department through the state have ascertained that trust mortgages aggregating approximately $138,000,000, at least, are carried without disclosure of the trusteeship on the public record, while other mortgages amounting to over $78,000,000 are designated upon the public record as trust mortgages.

In Yost's Est., 316 Pa. 463, it was pointed out that, in holding a straight mortgage in its own name with no other designation of the trust than a declaration upon its own books, a corporate trustee violated a well-settled rule of law, and that the Act of April 6, 1925, P. L. 152 (amending the Act of May 9, 1889, P. L. 159, which in turn amended the Act of April 29, 1874, P. L. 73), afforded no justification for its so doing. We held that, under the facts of that case, the beneficiary could require the trustee to account in cash for the money thus invested. Promptly after the petition for reargument in that case was refused, the straight mortgages held for the Guthrie estate were assigned of record to the trustees of the estate, thereby designating on the face of the instruments and on the public record the fact that the mortgages were held in trust for the estate. Endorsements to the same effect were made on the bonds accompanying the mortgages. No assignment of record was made of the mortgages in which the estate's interest was one of participation.

Semiannual statements, showing the mortgages held for the estate and the income therefrom, were prepared by the company and sent to the surviving life tenant and the two cotrustees. On the basis of these statements, numerous discussions were had with several of the beneficiaries, including two of the present exceptants, and analyses of the various mortgages for the information of the beneficiaries were made at the direction of the company's trust officer. Exceptant Charles M. Brown, Jr., testified that he had not examined any of the statements or consulted with any trust officer of the company concerning the mortgages in question. It appeared, however, that he was of full age, that he lived with his mother, who was likewise a beneficiary, and one of those who had had discussions about the mortgages, and that he knew his mother received statements. If he was as ignorant of the condition of his investments as he stated, it was only because of his own neglect to inquire. It does not appear that any of the exceptants had notice of the manner in which the mortgages were carried by the company before the account was filed. Most of the mortgages were in default when the account was filed, and have continued so. Each of the exceptants has elected to take in cash the money invested in mortgages carried by the company in its own name.

With regard to the mortgages of the participating type (with which we were not concerned in Yost's Estate), we think the Act of 1925, supra, provides sufficient warrant for the practice followed by the company. That act provides that trust companies may assign to various trust estates "participation in a general trust fund of mortgages . . . in which case it shall be a sufficient compliance with the provisions of this section for the company to designate clearly on its records" the mortgages, the names of the participating trust estates, and the amounts of their respective participations. It is further provided that the company may repurchase mortgages from the fund and substitute other mort-

gages therefor, and that no participating estate shall be deemed to have individual ownership in any mortgage in the fund. If designation on the company's records is sufficient in the case of a participation pool consisting of a number of mortgages, it must likewise be sufficient where the participation is by a number of estates in but a single mortgage. It is plain that the legislature saw fit to permit an exception to the rule in the case of participation in a pool of a number of mortgages because such pools could not be successfully operated otherwise. It is equally plain that the exception is no less necessary to the successful operation of participations in single mortgages, and that the legislative intention must therefore have been to include the latter within the exception. The distinction is between mortgages in which participation is allotted and those in which there is no participation. The single mortgage participation scheme is generically not distinguishable from that in which the participation is in a larger pool. Permission with regard to the greater must include permission as to the lesser. We are of the opinion that, so far as the participating mortgages are concerned, the practice here followed by the company was within the sanction of the Act of 1925, supra, and therefore not wrongful.

In Matter of Union Trust Co., 219 N. Y. 514, the Court of Appeals of New York was concerned with participations of various trust estates in mortgages held by the corporate trustee "in its name and in its own right." It was pointed out, on page 521, with reference to the way in which the mortgages were carried, that "Such manner of investing a trust fund violates the long-established rule that a trustee should invest trust funds in the name of the trustee as such, and also the rule that trust funds should at all times be kept, so far as reasonably possible, in the name of the trust, so that they can be identified, distinguished and followed by all persons interested therein." The court refused to approve the practice followed by the company, but also refused to penalize the

company with regard to the transactions then before it, because those transactions had been "reported to the beneficiaries." While it was not clearly so stated in the opinion, the court apparently refrained from imposing penalties because it felt it would be inequitable to do so, in view of the company's complete good faith and full disclosure to the beneficiaries. We need not hesitate to approve the practice here followed in connection with the participating mortgages, in view of the legislative warrant therefor in the Act of 1925, supra.

It is argued here, as it was in Yost's Estate, that the Act of 1889, supra, as amended by the Act of 1925, supra, likewise permits the practice followed by the company in carrying the straight mortgages. But it is quite clear that no such permission was intended. The act, as amended, expressly provides an exception to the common law rule in the case of participations. It must therefore be construed as excluding from the exception a case, such as that of the straight mortgage, which is not specifically mentioned: expressio unius est exclusio alterius. See Steckler v. Luty, 316 Pa. 440, 443, and cases there cited. A statute is not to be construed in derogation of the common law except to the extent expressly declared in its provisions: see Gratz v. Ins. Co. of North America, 282 Pa. 224, 234, and cases there cited. In Yost's Estate we simply enforced the long-established rule forbidding a trustee to take trust property in his own name as an individual. We adhere to that rule.

Under the facts of this case—which in vital respects are distinctly different from those before us in Yost's Estate, as appellants admit—we are not disposed to penalize the company or its cotrustees for its conduct. It is quite apparent that the company acted in the utmost good faith with regard to the mortgages.* Ample

---

\* In the Restatement of the Law of Trusts, the following remarks appear in section 179, commented: "Ordinarily it is the duty of the

notice and information concerning them was given to the beneficiaries, who were promptly told when the mortgages in question were allotted to the estate and were kept fully informed as to the status of the investments. In fact the company displayed a complete willingness to disclose all relevant facts to the beneficiaries and take them into its fullest confidence. In carrying the mortgages as it did, the company was following what it thought was a legally valid practice and what was in fact a widely established custom. After the decision in

---

trustee to earmark trust property as trust property. Thus, title to land acquired by the trustee as such should be taken and recorded in the name of the trustee as trustee. . . .

"The trust property should be ordinarily so earmarked as to indicate not only that it is trust property but that it is property of the particular trust upon which it is held. . . .

"If the trustee takes title to the trust property in his individual name in good faith, and no loss results from his so doing, he is not liable for breach of trust. Thus, if the trustee of a mortgage accepts a conveyance of the property from the mortgagor, and in order to prevent a merger takes the conveyance in his individual name, acting in good faith and crediting the trust estate in his accounts with all receipts from the property, and the only objection to the transaction is that he took title in his own name, he is not liable merely because the property depreciates in value. The breach of trust in such a case is merely a technical breach of trust, and no loss has resulted therefrom. If, however, he took title in his own name in bad faith, intending to misappropriate the property, he is liable for the full amount of the mortgage and interest thereon. Even if he acted in good faith, if a loss resulted from the fact that he took title in his own name, as for example if his personal creditors were thereby enabled to reach the property free of trust, he would be liable for the loss." [This paragraph did not appear in the corresponding section (section 174, Tentative Draft No. 2) of the tentative draft of the Restatement.]

Cf. Keen's Est., 306 Pa. 363, in which the trustee of a mortgage, in order to avoid the expense of a foreclosure proceeding, agreed to take title to the property, and, to avoid a merger, took it in his own name. The action was in complete good faith, was for the benefit and temporary convenience of the estate, and no loss resulted from it. The trustee was therefore held not liable.

Yost's Estate, action was promptly taken by the company to rectify its mistake and to indicate the fact of trusteeship upon the public record as well as on the face of the instruments. The loss which the exceptants have suffered, if any, has in no way been the result of the breach of trust here complained of, but, for all that appears, would have been nonetheless incurred had the mortgages been carried properly from the start. Clearly the exceptants should not be permitted to shift their loss to these trustees. It would be unconscionable to require the trustees to account in cash under the facts of this case. No court of equity should permit it. The exceptants have at most suffered what may be only a temporary loss, and that solely because of the economic conditions of the times and the consequent general shrinkage in values. They would nonetheless ignore the good faith and sound business judgment of the trustees, who have made full disclosure of their conduct of the trust, and would take advantage for their own gain of a technical violation of law by the imposition of penalties therefor. The court below was plainly right in rejecting their claim. It is to be understood, however, that the decree of the court below is affirmed not because the conduct of the trustees was rightful, nor because there was an affirmance of their conduct by the exceptants, but because, under the circumstances, a grave injustice would result if the trustees were required to account in cash as claimed. The record now before us, very different from that with which we were confronted in Yost's Estate, appeals strongly to the conscience of a court of equity to relieve these trustees from the penalties which were imposed in the Yost case, where, under the facts there shown, no such appeal was present. That a court of equity may in its discretion refrain from inflicting penalties which it considers unjust under the circumstances is beyond dispute.

Decree affirmed.