# REIMOLD v. COMMISSIONER OF INTERNAL REVENUE.

## No. 8547.

Circuit Court of Appeals, Third Circuit.

Argued March 9, 1944.

Decided July 27, 1944.

Thomas McNulty, of Jersey City, N. J., for petitioner.

Muriel Paul, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Robert N. Anderson, Spec. Asst. to Atty. Gen., on the brief), for respondent.

Before BIGGS, JONES, and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The sole question involved here arises under Section 23(e) (1) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 23(e) (1).[1]

The taxpayer contends that a loss arising from a stock transaction was properly deducted by him as incurred "in trade or business." The facts, briefly, as found by the Tax Court are: The petitioner is president of two affiliated corporations, Woburn Degreasing Company of New Jersey and Woburn Degreasing Company of Massachusetts. His father, Reimold, Sr., had been president of the companies at the time of his death in 1918. He was succeeded by one O'Rourke who died in 1928, with the petitioner following the latter in both offices. The petitioner was the sole executor of his father's will and co-executor under the O'Rourke will. The assets of the Reimold, Sr. Estate consisted principally of stock in the two companies. The O'Rourke Estate held a substantial number of shares of the same sort of stock. Petitioner did not accept any compensation for his services as executor under his father's will and he turned back the fee allowed him in the O'Rourke Estate.

In 1928 there was serious competition in the degreasing business. In an effort to protect the Woburn companies, petitioner entered into negotiations with a Mr. Weathers (of Byllesby Company of Boston, investment brokers) who controlled the competing degreasing company. As the result, the competition was eliminated. In order to close with Weathers and at the latter's request, the petitioner, for the Reimold, Sr. Estate, purchased certain shares of Northern States Power "A" stock at a price in excess of $13,000. Petitioner used estate money to do this, taking title in his own name. On being advised that the particular stock was not a legal investment permitted an executor under the laws of New Jersey, the petitioner sold the stock for the estate. The net price of $1,266.47, realized from the sale, was turned over to the estate. The petitioner then cancelled a debt of the estate to him to the extent of the difference between the original cost of the stock and the net amount from the sale. This totalled $12,232.53, which the petitioner in his 1939 income tax return deducted from gross income.

The petitioner states that his theory in so doing, was that, since the loss was incurred by him in order to protect the business of the Woburn companies and to safeguard the estates of which he was executor, the loss was incurred in his "trade or business." The taxpayer calls this composite picture of his activities, the solution to the problem. He urges that to draw a sharp line of cleavage between his activities as president and general manager of the Woburn companies and his activities as executor of the Reimold Estate, is to try and separate the inseparable. He further suggests that the decision of the Tax Court entirely disregards the effect of his overall activities. A study of the record, particularly of the findings of fact and opinion, shows that the Tax Court carefully and fairly considered the identical proposition here presented. That court, however, was confronted, as we are, with the well settled tax principle which is restated by Chief Justice, then Mr. Justice, Stone, for the U. S. Supreme Court in White v. United States, 305 U.S. 281 at page 292, 59 S.Ct. 179, at page 184, 83 L.Ed. 172:

"Moreover, every deduction from gross income is allowed as a matter of legislative grace, and 'only as there is clear provision therefor can any particular deduction be allowed. * * * A taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within

---

[1] "Sec. 23. Deductions from gross income.

"In computing net income there shall be allowed as deductions:

* * * * * *

"(e) Losses by individuals. In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

"(1) if incurred in trade or business;

* * * *"

its terms.' New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348."

The petitioner admittedly is not a professional executor or trustee and does not claim that handling estates is his "trade or business." Even if such were the situation, the illegal investment by him which resulted in the loss, would not be considered part of the "trade or business" of an executor and he would be individually responsible as held in Stuart v. Commissioner, 1 Cir., 84 F.2d 368, certiorari denied 299 U.S. 575, 57 S.Ct. 38, 81 L.Ed. 423.

■ On the other hand, per arguendo, assuming that the Woburn companies were the petitioner's business, the loss does not stem from that source. The investment allegedly to assist the corporations was not by the petitioner personally. The loss arises solely from the fact that as a fiduciary, the petitioner made an illegal investment, later replacing the deficit remaining after the sale of the stock. Petitioner's liability for the loss springs entirely from his trust position. His association with the Woburn concerns had nothing to do with it. The stock itself was carried for more than ten years by the estate. If the stock had shown a profit, that profit would have been the property of the estate. If the investment had been one specifically allowed by New Jersey law, or perhaps authorized or approved by the New Jersey courts under the special circumstances, then the loss would have been that of the estate. In either of those events, the petitioner would not have been out of pocket at all.

Lloyd v. Commissioner, 8 B.T.A. 1029 is cited in support of the taxpayer's argument but the situation in that case was importantly different. There the petitioner, the president of a company, advanced his own funds in an effort to obtain a formula which would have been beneficial to his corporation. His understanding with the corporation was that such advances would be repaid to him if the endeavor was successful. The formula was not obtained and the petitioner was not reimbursed for his advances by the company. Under those particular facts the amount the petitioner expended was upheld as a deduction on account of business expenses. In the present issue the taxpayer's loss resulted from his improper use, as executor, of estate funds.

Mention was made at the argument of the 1942 amendment to Section 23 of the Internal Revenue Code, 26 U.S.C.A. Int. Rev. Code. That amendment was to Subsection (a) (2) and reads as follows:

"(2) Non-trade or non-business expenses. In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."

That amendment, it will be remembered, was the result of the decision in Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783, where a claimed deduction under Section 23(a) (1), for the expenses of managing the taxpayer's investments was denied on the ground that this did not constitute a "trade or business." The amendment corrected the unfair situation as illustrated by the Higgins decision where taxes were being paid on non-business income with no deduction allowed for expenses in connection therewith. It has to do with ordinary and necessary expenses and not with losses. It has no relevancy here.

The Tax Court's conclusion that the loss of the petitioner was not sustained in his "trade or business" is fully supported by the record. That decision is, therefore, affirmed.