**CLARK et al. v. KAVANAGH, Collector of Internal Revenue.**

No. 3856.

District Court, E. D. Michigan, S. D.

Nov. 30, 1944.

Butzel, Eaman, Long, Gust & Bills, of Detroit, Mich., for plaintiff.

John C. Lehr and Arnold W. Lungerhausen, both of Detroit, Mich. (Samuel O. Clark, Jr., Andrew D. Sharpe, and Leland T. Atherton, all of Washington, D. C., on the brief), for the Government.

Findings of Fact

LEDERLE, District Judge.

1. This is an action seeking refund of a 1939 income tax deficiency of $20,562.81 levied by the Commissioner of Internal Revenue and paid by the taxpayers, Emory W. Clark and wife, plaintiffs herein, to the defendant, Giles Kavanagh, Collector of Internal Revenue for this District. As the transactions involved relate solely to plaintiff Emory W. Clark, for brevity he will

be referred to hereafter as the taxpayer. Claim for refund and this suit were timely filed.

2. Many details of the facts herein were agreed upon at pretrial conferences and were incorporated in a formal stipulation of facts, which is hereby adopted as part of these findings. The following summary of stipulated and testified facts is all that is necessary for a decision of the real issue, namely, whether taxpayer, one of the three co-trustees of a New York testamentary trust established by his aunt, under which income is payable to him semi-annually for life, is entitled to a claimed deduction of a trustee's loss of $235,242.40 from 1939 gross income, under Section 23 (e) (1) or (2) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 23(e) (1, 2), as a loss incurred in a trade or business or in a transaction entered into for profit though not connected with the trade or business. The claimed deduction represents payments by him in 1939 to his co-trustees in connection with his agreements to indemnify them against any liability they incurred because of retaining an illegal investment in said trust.

3. The illegal investment consisted of 3233 shares of the capital stock of Detroit Bankers Company acquired by the Trustees for the trust during February, 1930, in exchange for shares of First National Bank in Detroit. The Detroit Bankers Company was organized early in 1930 as a holding company for bank stock, and issued 1,750,000 shares, valued at $20 each, in exchange for stock of five constituent banks. At that time the taxpayer had been President of First National Bank in Detroit for 25 years and was then acting as Chairman of its Board of Directors. He was one of the incorporators and the first Chairman of the Board of Detroit Bankers Company. He held this latter position for a year, and thereafter remained with the holding company as a Director. During the times here involved he personally owned 6,200 of the outstanding 1,750,000 shares of Detroit Bankers stock, being approximately ⅓· of 1% of the stock. In February, 1933, the doors of the constituent banks were closed and have not re-opened for normal banking business. The capital of Detroit Bankers Company consisted of $1200 in addition to stock of constituent banks. During 1933 the Detroit Bankers Company was dissolved by a state court decree and a receiver appointed to wind

up its affairs and a petition in bankruptcy was filed against it, but no proceedings were had thereon. In the same year receivers were appointed for the constituent banks, the largest of which had been First National Bank-Detroit, and the banks have been in process of liquidation ever since. Most of the history of Detroit Bankers Company is outlined in Barbour v. Thomas, D.C.1933, 7 F.Supp. 271, affirmed 6 Cir., 86 F.2d 510, certiorari denied 300 U.S. 670, 57 S.Ct. 513, 81 L.Ed. 877, which case determined that Detroit Bankers Company was "hopelessly insolvent" and that stockholders of Detroit Bankers Company were liable for a $25,000,000 stock assessment levied in 1933 by the Comptroller of the Currency on shares of First National Bank-Detroit at the ratio of $14.055775 per share of Detroit Bankers Company.

4. The taxpayer induced his co-trustees to exchange the shares of First National Bank in Detroit for shares of Detroit Bankers Company in 1930. Counsel for the New York trustees advised the trustees that an investment of trust funds in bank stock was an unauthorized investment under the will establishing the trust and applicable New York law. The stock was actively traded on the open market, and could have been sold in 1930 at a very substantial profit to the trust, the shares selling for around $130.00 each. The taxpayer prevailed upon his co-trustees to keep this unauthorized investment in the trust portfolio, and on January 10, 1931, delivered to them an agreement indemnifying them from any liability they had incurred or might incur by retaining said shares as an investment of the trust. In 1936, after the banks had been in liquidation for three years, the taxpayer executed and delivered to his co-trustees a demand promissory note in the amount of $235,242.40, being the value of the stock determined by the last previous accounting of said trustees in the New York Surrogate Court on July 7, 1930. Securities were pledged as collateral to this note under an agreement of the same date, in which the taxpayer guaranteed the prompt payment of all liabilities his cotrustees had incurred or might incur by retaining this unauthorized investment and agreed that if at any time his co-trustees were required by any competent authority to substitute a proper investment for this unauthorized investment the taxpayer would pay them the face amount of the note. In 1939 the

808

taxpayer paid $235,242.40 to his co-trustees, in return for which his note was cancelled and the Detroit Bankers stock transferred to him. This represents the $235,242.40 deduction claimed by the taxpayer for 1939. In 1940, the trustees' transactions in relation to this unauthorized investment were approved by order of the supervising Surrogates Court, which approved the trustees' accounting covering the period from 1930 to 1940.

■ 5. During the nineteen-thirties the trustees of the trust estate were holding and safeguarding a fund of stocks and bonds, collecting income, making investments and re-investments, distributing income to the beneficiary, and keeping accounts under the will establishing the trust, and, as such, were not carrying on a trade or business but were holding, managing and conserving investments and collecting and distributing income therefrom.

■ 6. Taxpayer is a man of substantial means and varied financial activities in this community. During the years in question a very small portion of his time was devoted to his duties as trustee of this New York trust and a similar trust established by the same will of his aunt for his co-trustee, Clark Williams, another nephew of the testator. His annual fees as trustee under this will approximated $10,000. The retention or disposition of the stock in question had and would have had no effect upon his fees as trustee. Other than this family appointment, the taxpayer has never acted as trustee. He did not engage in the business of buying and selling securities nor of acting as financial adviser except in connection with his duties as a bank officer. He was not engaged in the business of acting as professional trustee nor had he ever held himself out as so engaged. He was not engaged in the business of indemnifying trustees against losses resulting from improper investments of trust funds in Detroit Bankers stock. He was not personally engaged in the banking business. His duties as a bank officer were in performance of the business of the bank and holding corporations.

7. The payment of $235,242.40 in 1939 resulted from the transaction entered into in 1931 whereby the taxpayer agreed to indemnify his cotrustees for the purpose of inducing them to retain the improper investment in the trust portfolio. An impelling motive was the preservation of his reputation in financial circles by not disposing of a block of Detroit Bankers stock over which he exercised some control, while he acted as a director of the corporation. Any profit from the unauthorized investment would have been the profit of the trust. There is nothing to indicate that the transaction could have or was reasonably expected by the taxpayer to have proximately resulted in any profit to him individually. The best he could have reasonably expected to result from this transaction was that he would not have to make a payment under his agreement. The taxpayer's motive in entering into this transaction was not for profit.

8. The taxpayer has not proven that the payment in 1939 constituted a loss incurred in a trade or business or a loss incurred in a transaction entered into for profit though not connected with the trade or business.

## Conclusions of Law

■ 1. This is a suit for recovery of income taxes paid by plaintiffs to defendant Collector under an allegedly erroneous assessment, and, as such, is an action arising under a law providing for internal revenue, over which this court has jurisdiction. 28 U.S.C.A. § 41(5).

■ 2. "Every deduction from gross income is allowed as a matter of legislative grace, and 'only as there is clear provision therefor can any particular deduction be allowed. * * * A taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms.'" White v. United States, 305 U.S. 281, 292, 59 S.Ct. 179, 184, 83 L.Ed. 172; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1848.

■ 3. Where it appears, as here, that a taxpayer has not established that he incurred a loss in a trade or business or in a transaction entered into for profit though not connected with the trade or business, he has failed to overcome the presumption of the correctness of the Commissioner's denial of the claimed loss, and it follows that judgment of no cause of action must be entered in favor of the defendant herein. Sec. 23(e) (1) and (2), Int.Rev.Code, 26 U.S.C.A. Int.Rev.Code, § 23(e) (1, 2); Dalton v. Bowers, 1932, 287 U.S. 404, 53 S.Ct. 205, 77 L.Ed. 389; Welch v. Helvering, 1933, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; Higgins v. Commissioner of Internal Revenue, 312 U.S. 212, 61 S.Ct.

475. 85 L.Ed. 783; City Bank v. Helvering, 313 U.S. 121, 61 S.Ct. 896, 85 L.Ed. 1227; United States v. Pyne, 313 U.S. 127, 61 S.Ct. 893, 85 L.Ed. 1231; Goldsborough v. Burnet, 4 Cir., 1931, 46 F.2d 432; Dresser v. United States, 1932, 55 F.2d 499, 74 Ct.Cl. 55, certiorari denied 287 U.S. 635, 53 S.Ct. 85, 77 L.Ed. 550; Hines v. Commissioner of Internal Revenue, 7 Cir., 58 F.2d 29; Stuart v. Commissioner of Internal Revenue, 1 Cir., 1936, 84 F.2d 368, certiorari denied 299 U.S. 575, 57 S.Ct. 38, 81 L.Ed. 423; Paine v. Commissioner of Internal Revenue, 1 Cir., 1939, 102 F.2d 110; Reimold v. Commissioner of Internal Revenue, 3 Cir., 1944, 144 F.2d 390.