CLARK et al. v. KAVANAGH, Collector of Internal Revenue.

No. 10008.

Circuit Court of Appeals, Sixth Circuit.

Dec. 7, 1945.

Thos. G. Long, of Detroit, Mich. (Butzel, Eaman, Long, Gust & Kennedy, of Detroit, Mich., on the brief), for appellants.

Leland T. Atherton, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, Hel-

en R. Carloss, and Leland T. Atherton, all of Washington, D. C., and John C. Lehr and Morris Zwerdling, both of Detroit, Mich., on the brief), for appellee.

Before HICKS and MARTIN, Circuit Judges, and FORD, District Judge.

HICKS, Circuit Judge.

Suit by apellants against appellee to recover $20,562.81 paid under protest as income taxes for 1939. The case was tried by the District Judge without a jury. Emory W. Clark, the only appellant having any interest here, will be referred to as the taxpayer.

The evidence consisted of stipulated facts adopted by the court and the testimony of the taxpayer. The question here is one of law, namely, whether under Sec. 23(e) of the Internal Revenue Code, 26 U. S.C.A. Int.Rev.Code, § 23(e), the taxpayer is entitled to recover the amount sued for, as a deduction for loss incurred, (1) in trade or business; or (2) in any transaction entered into for profit, though not connected with the trade or business.

Mary Clark Thompson, the taxpayer's aunt, died July 28, 1923, leaving a will which divided a part of her estate into two trusts. The taxpayer was the beneficiary for life of the income from one trust and Clark Williams was the beneficiary for life of the income from the other. In each trust the Trustees were the taxpayer, Clark Williams and the First National Bank of New York.

The taxpayer had been President of the First National Bank of Detroit for about twenty-five years prior to 1930 and was a large stockholder therein. On Sept. 24, 1924, the trust here involved called the Clark trust, acquired from the executors of the Thompson estate, 724 shares of the stock of First National Bank of Detroit of the value of $235,300.00 and held these shares until 1930.

Early in 1930 the Detroit Bankers Company was organized. At that time the taxpayer was Chairman of the Board of the First National Bank of Detroit and he became one of the organizers of the Detroit Bankers Company and a signer of its Articles of Incorporation and the first Chairman of its Board. He held the chairmanship for a year and continued as a director. The Detroit Bankers Company was organized to acquire and hold the capital stock of five constituent banks, including the First National Bank of Detroit. The taxpayer became the holder of 6000 shares of the Detroit Bankers stock in exchange for stock in the First National Bank of Detroit. About February 11, 1930, at the request of the taxpayer, the Clark trust exchanged the 724 shares of the stock of the First National Bank of Detroit, par value $100.00 for 3233 shares in round numbers of the common stock of Detroit Bankers Company, par value $20.00.

On January 5, 1931, the attorneys for the First National Bank of New York, one of the trustees of the Clark trust advised the bank by letter that under paragraph 18 of Mrs. Thompson's will, the trust was unauthorized to retain as an investment the 3233 shares of Detroit Bankers stock. That such retention was unauthorized is nowhere questioned in this record. Under the 18th paragraph of Mrs. Thompson's will, the trustees were empowered to invest and reinvest only in such securities as those in which savings banks in the State of New York could invest and Detroit Bankers stock did not come within this class. The letter from the attorneys concluded as follows:

"While under the terms of Mrs. Thompson's will the retention of the stock in question is not authorized, we think it is a practical matter for the trustees to determine, in view of all the circumstances after hearing from Mr. Clark, in case he still desires its retention. * * * Mr. Clark could indemnify and hold harmless his co-trustees from any loss they might sustain by retention of the stock in case of desiring them to hold this investment. In that event the trustees could determine what, if any, risks they were incurring of having their account surcharged at any future date and be guided in their discretion accordingly."

When this letter was brought to the attention of the Trustees, the taxpayer at the request of his co-trustees on January 31, 1931, entered into an indemnity agreement with the Trustees of the Clark trust by which they at his request retained the 3233 shares of Detroit Bankers stock as an investment; in consideration whereof the taxpayer agreed to indemnify and hold harmless the Trustees from any loss which they or any of them might incur by retaining such shares or any part thereof.

In February 1933, the Detroit Bankers Company became hopelessly insolvent and

its stock was of little or no value and on March 12, 1936 the First National Bank of New York, one of the trustees of the Clark trust, requested the taxpayer to make good upon his indemnity agreement, whereupon, on June 5, 1936, the taxpayer executed and delivered to his co-trustees, his demand promissory note for $235,242.40, the amount of the loss incurred by the trust, which note was secured by collateral, and in 1939 he fully paid and discharged the note.

The court found upon substantial evidence that the taxpayer, a man of substantial means and varied financial activities, devoted a very small portion of his time to his duties as trustee of the trusts in question, for which, under Mrs. Thompson's will, he received annually a fee of approximately $10,000.00; that he was trustee of no other trusts and did not hold himself out as a professional trustee or as being in the business of indemnifying trustees against loss for improper investments.

From our viewpoint it is unnecessary to determine whether a testamentary trustee in the exercise of his duties as such is engaged in business. We may assume without deciding that the taxpayer, in the execution of the trust, was engaged in business. The District Court pretermitted that question but held as a matter of law that his loss was not incurred in business and to this we agree.

Under the 18th clause of Mrs. Thompson's will, the Trustees were empowered to invest and reinvest in certain securities and in no others. They should never have invested in Detroit Bankers stock but having done so it was their duty to dispose of it, which, as found by the District Court, they might have done for a fair profit. Upon the execution of the agreement by the taxpayer to indemnify them, they chose to retain the stock and assume the risk. The District Court held as a matter of fact that an impelling motive for the execution of the indemnity by the taxpayer "was the preservation of his reputation in financial circles by not disposing of a block of Detroit Bankers stock over which he exercised some control while he acted as a director of the corporation." There was substantial evidence to support this holding. The taxpayer with commendable frankness testified:

"A. I had to lose. I believed the stock of the Detroit Bankers was a good stock and a desirable one to hold in trust. I was interested as a director in the Detroit Bankers and I wouldn't have felt that I could walk down,—I having managed the First National Bank for twenty-five years and had to do with the forming of the Detroit Bankers' Club—Detroit Bankers Company—I would have felt like a yellow dog. Further than that, I had 6000 of the shares of my own of the Detroit Bankers stock and had the stock been sold it would have affected that as well as the entire thing. I was sort of on the spot. There are the three reasons."

He further testified:

"Q. Don't you know or did you know that under the indemnity agreement there that there was no liability on you to make payment to your co-trustees until at least 1940 when their accounting was finally approved by the Surrogate? A. Well, that wouldn't—I don't know whether I did or not. That wouldn't enter into it. It is a debt of mine that I like to pay. I like to pay my debts.

"Q. You regard it as a personal debt of yours? A. I had signed up to pay it."

The District Court was justified in concluding that the taxpayer had not incurred a loss in the discharge of his duty as Trustee. He was not required by law in his fiduciary capacity to indemnify the other trustees nor were they authorized to retain the Detroit Bankers stock as a consideration for the indemnity. The taxpayer's obligation under the indemnity agreement was purely a personal one, which became merged into the note which he in turn paid out of his personal estate.

We think the case should be aligned with Stuart v. Com'r, 1 Cir., 84 F.2d 368, see also Reimold v. Com'r, 3 Cir., 144 F.2d 390.

Upon the second issue we simply say that there is no substantial evidence to support the taxpayer's contention that his loss was incurred in a transaction entered into for profit. As found by the District Court, it was not incurred for profit but for his protection as an outstanding figure in business and finance.

The judgment of the District Court is affirmed.