OPINION. Tietjens, Judge: The first issue, which is common to all three taxable years, involves the question of' whether petitioner is entitled to deductions for all or any part of his disbursements to the Sales Company in the amounts of $5,058.39 in 1943, $3,226.60 in 1944, and $2,879.31 in 1945. Petitioner’s primary contention is that those amounts were paid by him as a guarantor and constituted business bad debts deductible in full under section 23 (k) (1), Internal Revenue Code. On the other hand, respondent contends that the disbursements were not made by the petitioner as a guarantor; that they were worthless as claims, when made; and that they did not constitute bad debts, either business or nonbusiness, under section 23 (k) (1) or (4) ,[1] Respondent further contends, under his affirmative plea, that the disbursements constituted capital contributions to petitioner’s wholly owned corporation and that he erred in allowing any amounts as deductions on account thereof in his deficiency notice. Accepting the rule of Shiman v. Commissioner, 60 F. 2d 65, (See also Daniel Gimbel, 36 B. T. A. 539, and D. W. Pierce, 41 B. T. A. 1261), it still becomes necessary for petitioner to satisfy us that, if not when the sums were paid by him, at least when the debtor corporation’s obligations were originally guaranteed, the corporation was sufficiently solvent to justify some hope that these gratuitous acts would ultimately be compensated by repayment. Hoyt v. Commissioner, 145 F. 2d 634. On that factual issue, the evidence is so meager as to make it impossible to reach the necessary conclusion. All the evidence we have is that while in 1930 the guaranteed corporation had a surplus deficit of $21,000, by 1932 and 1933, when the guarantees were made, the value of the corporation’s assets had declined. We are accordingly unable to conclude that petitioner has proved that the corporation was solvent at the time of the original guarantees. Indeed, petitioner does not give the hope of salvage as his reason for guaranteeing the corporation’s debts, but rather his personal standing in the community. That being so, it cannot be said, as it was in Shiman, that petitioner’s guarantee of a solvent debtor’s obligations left him no choice when subsequently the debtor became unable to perform and the taxpayer, on the one hand, was required to make good in its place, and, on the other, acquired in exchange only a worthless obligation of an insolvent debtor. This would normally eliminate even the assumption that this was a nonbusiness bad debt, making it comparable to a loan to a debtor so insolvent that the debt was worthless when acquired. Cf. Hoyt v. Commissioner, supra; Fred A. Bihlmaier, 17 T. C. 620; E. J. Ellisberg, 9 T. C. 463. Similarly, the facts outlined prevent the conclusion that the advances were business bad debts, Omaha National Bank v. Commissioner, 183 F. 2d 899; A. Kingsley Ferguson, 16 T. C. 1248; Jan G. J. Boissevain, 17 T. C. 325, or losses incurred in a trade or business under section 23 (e) (1), Burnet v. Clark, 287 U. S. 410, or in a transaction entered into for profit under section 23 (e) (2), Clark v. Kavanagh, 152 F. 2d 49; Harold Kushel, 15 T. C. 958, the circumstances of the original guarantee eliminating any possibility that the purpose was to embark upon a profitable venture. Nor do we see how in the light of petitioner’s occupation they can be treated as business expenses incurred for the production of income under section 23 (a) (2), assuming as we must that there was no possibility at any time that income would result. Defuty v. du Pont, 308 U. S. 488; Low v. Nunan, 154 F. 2d 261. When we come, however, to considering disposition of the nonbus-iness bad debt issue, we are met with the condition of the pleadings. The original deficiency was determined on the theory that the claim was allowable as a nonbusiness bad debt, and it was only by affirmative answer that respondent raised the contention that no deduction whatever could be granted. To that extent, the burden of proving the necessary facts was upon respondent,[2] particularly the fact that the corporation was so insolvent in 1931 and 1932, when the guarantees were entered into, that petitioner was dealing with a worthless debtor. On this point, he has no more nearly sustained his burden than has the petitioner sustained his. We are accordingly required to approye the deficiency as initially determined and find that the amounts in question were deductible as nonbusiness bad debts and hence are subject to treatment as short term capital losses. Internal Eevenue Code, section 23 (k) (4). As the case is presented, the second issue is narrowly limited. There is no question as to the character of petitioner’s loss. It is conceded by respondent that when petitioner, as a result of the sale of the foreclosed property, received the proceeds originally invested in the participating interest in the mortgage, his loss was ordinary and not capital. The sole question is the amount of the loss which, in turn, depends on what was petitioner’s basis. This, again, requires only that we select between the amount originally invested in the participating mortgage interest and the value (less subsequent depreciation) of the property at the time of foreclosure. It seems evident that although the foreclosure undoubtedly resulted in a deduction, Commissioner v. Spreckels, 120 F. 2d 517; Regulations 111, section 23 (k)-3, the claim would be allowable only to the Trust Company if it was in fact a trustee and not to petitioner notwithstanding his beneficial interest. Under the special rule of the Pennsylvania cases we conclude that petitioner’s interest at the time of foreclosure was purely that of the beneficiary of a special trust. Horton's Estate, 331 Pa. 507, 1 A. 2d 292; Guthrie's Estate, 320 Pa. 530, 182 A. 248; Rambo’s Estate, 327 Pa. 258, 193 A. 1. Under those circumstances the loss on foreclosure would have to be taken by the trust and not by petitioner himself. T. Rosslyn Beatty, 28 B. T. A. 1286; George W. Vreeland, 16 T. C. 1041. That being so, the situation is comparable to one where a different taxable entity, such as a corporation, suffers a loss which cannot be deducted by another taxpayer, say, one of its stockholders. It follows that only when the transaction was finally completed and the proceeds were paid to petitioner was the loss deductible by him. We conclude that the basis adopted by petitioner which was the original amount of the investment (Maguire v. Commissioner, 61 S. Ct. 789; Helvering v. Reynolds, 61 S. Ct. 971), was properly used by him in computing the loss. William George McKitterick, 46 B. T. A. 597. Reviewed by the Court. Decision will be entered under Rule 50. Raum, J., dissents. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions : ******* (k) Bad Debts.— (1) General rule. — Debts which become worthless within the taxable year; * * * ******* (4) Non-business debts. — In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within t le taxable year, the loss resulting therefrom shall be considered a loss from the sale ur exchange during the taxable year, of a capital asset held for not more than 6 months. The term “non-business debt” means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer’s trade or business. Rules of Practice before The Tax Court of the United States: RULE 32. — BURDEN OF PROOF The burden of proof shall be upon the petitioner, * * * except that in respect of any new matter pleaded in his answer, it shall be upon the respondent.