HERMAN I. SHALLER AND CORA E. SHALLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shaller v. Commissioner
Docket Nos. 2733-83, 29069-83.
United States Tax Court
T.C. Memo 1984-584; 1984 Tax Ct. Memo LEXIS 92; 49 T.C.M. (CCH) 10; T.C.M. (RIA) 84584; November 1, 1984. Herman I. Shaller, pro se. Clement Shugerman, for the respondent. TANNENWALD MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined the following deficiencies in the petitioners' Federal income taxes: Taxable year
Deficiency
1979
$4,042.83
1980
9,762.58 In addition, respondent amended his answer with respect to taxable year 1979 to claim an increased deficiency in the amount of $1,680 based *95 on disallowance of petitioners' claimed partnership losses for 1979. After concessions, the issues for decision are (1) whether Herman I. Shaller (petitioner husband) was, for purposes of sections 162 and 280A, [1] engaged in any trade or business other than the marketing of his book, (2) whether more than 10 percent of petitioners' dwelling was "exclusively used on a regular basis" in any trade or business of petitioners within the meaning of section 280A, (3) whether petitioners correctly calculated their depreciation deduction by reference to the fair market value of their home, (4) whether more than 10 percent of petitioners' automobile expenses are properly deductible, (5) whether petitioners' travel expenditures have been adequately substantiated under section 274(d), (6) whether petitioners are entitled to the investment tax credit for any property other than the automobile purchased in 1979, (7) whether petitioners' partnership's maintenance of a group health insurance policy is a deductible business expense, and (8) whether petitioners properly deducted a portion of the amount billed them by credit card companies as unstated interest under section 163(b). *96 FINDINGS OF FACT Some of the facts have been stipulated and are so found; this reference incorporates the stipulations of facts and attached exhibits. Petitioner husband and Cora E. Shaller maintained their residence in Silver Spring, Maryland, at the time they filed their petition in this case. Petitioner and his wife timely filed joint Federal income tax returns for 1979 and 1980. In 1969, petitioner's position with the Office of the Chief of Staff, Department of the Army, was abolished. He was offered and accepted in return for his resignation "early out" retirement. Petitioner, a licensed professional engineer in the state of Maryland, pursued various activities in the years in issue resulting in income for those years, all of which was reported, as follows: 1979
1980
Interest income
$6,290.35
$9,816.00
Dividend income
20,177.79
17,993.46
Pension and annuity income
18,612.00
21,033.00
All of the interest and dividend income was earned by petitioners' "Dual Purpose Mutual Fund" (the Fund), a port-folio of investments purchased by petitioner husband in 1970 and managed by him from an office at petitioners' home during the years in question. *97 Mrs. Shaller, pursuant to an oral agreement with petitioner husband, advanced the capital needed to initiate the Fund in return for a promise of income that would increase each year. On their 1979 and 1980 returns, petitioners reported the Fund's activity in terms of transactions as follows: 1979
1980
Securities purchases
1
0
Securities sales
1
7
Stock option purchases
6
2
Stock option sales
2
6
In 1979, two of the sales resulted in short-term gain or loss, and one resulted in long-term gain or loss. In 1980, seven of the sales were short-term and six were long-term. [2]
In 1977, petitioners formed the Oakview Book Press (OBP), a partnership having as its principal place of business petitioners' home. Petitioners were the only partners and secured for OBP an assigned International Book Publisher Identifier number and a listed mailing address *98 and telephone number. Petitioner husband's book, "Unified Planning and Budgeting in a Free Society," was publishedby OBP in 1977 and remains the only work ever published or marketed by the partnership. In 1979 and 1980, OBP's gross receipts totaled $105.48 and $30.00, respectively, and resulted solely from sales of nine copies of petitioner husband's book during these years. Petitioners expended money to maintain their home, incurred automobile and travel expenses related in part to OBP activities, paid premiums on a group health insurance plan for OBP employees and their spouses and minor children, [3] and purchased the automobile, computer, and computer printer in part for the use of OBP. Also during the years in question, petitioners paid amounts owing to credit card companies. As all payments were timely, no separately stated finance charges were imposed by the credit card companies. OPINION Because the principal statutory provisions here involved require that deductible expenses be paid in carrying on a trade or business of the taxpayer, [4] our major issue is the extent *99 to which petitioners were engaged in one or more trades or businesses. Respondent has conceded that, for the years in issue, petitioners were in the trade or business of marketing petitioner husband's book. Petitioners claim that their trades or businesses included publishing, researching additional books, investing in securities, pursuing the engineering profession, and researching the possibility of ocean surf as an energy source.Which, if any, of these asserted trades or businesses petitioners actually carried on will determine the extent to which their claimed deductions for home office expenses, automobile use, travel, and insurance premiums may be allowable. *100 Whether any or all of petitioners' activities rise to the level of a trade or business depends upon a variety of factors, including a profit objective, and no single factor is dispositive. Gestrich v. Commissioner,74 T.C. 525, 529 (1980), affd. without opinion 681 F.2d 805 (3d Cir. 1982). See also Dreicer v. Commissioner,78 T.C. 642 (1982), affd. without opinion (D.C. Cir., Feb. 22, 1983). The burden of proof is on the petitioners except with respect to the increased deficiency for 1979, as to which the burden of proof is on respondent. Rule 142(a). We see no need to deal with each and every factor.Rather, we will direct our attention to those factors which underpin our conclusion that, with one exception, [5] none of petitioner husband's activities has sufficient content to rise to the level of being carried on as a "trade or business." In so concluding, we have taken into account the principle that a taxpayer can be engaged in more than one trade or business. See Snyder v. Commissioner,295 U.S. 134, 139 (1935); Gestrich v. Commissioner,supra at 529; Curphey v. Commissioner,73 T.C. 766, 777 (1980). *101 It is clear that, at least as to the alleged ocean surf research trade or business, petitioners have failed to carry their burden of proof. Petitioners submitted 47 pages of exhibits purporting to demonstrate petitioner husband's activities in this area; however, the exhibits consist only of unsolicited research proposals, journal articles not authored by petitioner husband, and a rejected grant request. It is difficult to see how this evidence can lead us to conclude that petitioners actually engaged in any research at all, much less enough research to rise to the level of a trade or business. Petitioners' claim that respondent's regulations permit them to label petitioner husband's professional standing a trade or business must also be rejected. It is true that the "practice of a profession * * * is considered the conduct of a trade or business within the meaning" of section 62, section 1.62-1(d), Income Tax Regs. *102 , but the emphasis there is on the word "practice." It is also clear that-- A professional man may claim as deductions the cost of supplies used by him in the practice of his profession, expenses paid or accrued in the operation and repair of an automobile used in making professional calls, dues to professional societies, and subscriptions to professional journals, the rent paid or accrued for office rooms, the cost of the fuel, light, water, telephone, etc., used in such offices, and the hire of office assistants. Section 1.162-6, Income Tax Regs.But it is equally clear that mere membership in a profession is not enough. See Reisinger v. Commissioner,71 T.C. 568, 572 (1979); Wyatt v. Commissioner,56 T.C. 517, 520 (1971). [6]
*103 More interesting are petitioners' interrelated claims that they engaged in the trades or businesses of investing and of researching additional books for publication by OBP. Generally, "it is difficult for an individual's investment activity to rise to a level that constitutes a trade or business." Skoglund v. United States,230 Ct. Cl. 833, 835 (1982). Merely to collect interest and dividends from securities, even if the portfolio is large and the ministerial work laborious, is not engaging in a trade or business. Higgins v. Commissioner,312 U.S. 212 (1941). However, "a taxpayer who, for the purpose of making a livelihood, devotes the major portion of his time to speculating on the stock exchange" could be engaged in a trade or business. Snyder v. Commissioner,295 U.S 134, 139 (1935). Currently, the courts speak of this distinction as one between investing, i.e., holding securities for long-term capital appreciation, and trading, i.e., buying and selling frequently in order to make short-term swing profits. Moller v. United States,721 F.2d 810 (Fed. Cir. 1983), *104 revg. 553 F. Supp. 1071 (Cl. Ct. 1982); Groetzinger v. Commissioner,82 T.C. 793, 801 (1984), on appeal (7th Cir., Aug. 24, 1984). Unless the taxpayer is a trader, his investment activities cannot be a trade or business, frequency notwithstanding. Moller v. United States,721 F.2d at 814-815. In the instant case, petitioners do not appear to be securities traders. They engaged in a limited number of transactions during 1979 and 1980. Theirreported capital gain and loss transactions for the years in issue are about equally split between long-term and short-term. The very nature of the Fund -- providing current income to Mrs. Shaller and capital appreciation to petitioner husband -- belies a trader status for petitioners. Thus, their securities activities alone do not rise to the level of a trade or business. [7]
*105 However, petitioners advance the claim that it is not the Fund itself, but the research going into each individual investment decision, that is the business on which the home office and other deductions are based. Petitioner husband asserts that his true occupation during 1979 and 1980 was not as an investor, but as an author researching decision strategies for the revised edition of his book on budgeting. Thus, petitioners claim, each trading decision tested out a hypothesis regarding individual investment decisions derived from the formulae he worked out for his first book; the interest and dividend income was the source of funding for, but not the object of, petitioner husband's research. We generally do not hesitate to dismiss summarily taxpayers' attempts to posit business deductions on vague descriptionsof the relationship between "research" projects and an alleged trade or business. [8] However, given petitioner husband's scholarly background, work experience, and at least superficially plausible explanation of how he planned to extrapolate from the results of his earlier *106 book, petitioners' claims merit closer study. In applying the "facts and circumstances" test to decide whether petitioner husband's research for his book rises to the level of a trade or business, the profit motive test presents a problem. Under petitioners' theory, we cannot view the investment income earned as evidence of a profit motive for their trade or business. If petitioners' motive was to reap investment income, their trade or business must be limited to investing; as petitioners did not qualify as traders in the years in issue, they were not engaged in this trade or business. If, however, their motive was future profits from sales of a second book -- and this must have been the motive if petitioners are to have any argument at all -- the investment proceeds are irrelevant to petitioners' profit motive, and the anticipated profits from the second book must stand alone. *107 A lack of income during the years in issue from a book is not necessarily fatal on the question of profit motive. This Court has found authorsof books that were not printed and for which no income was received during the years in question to be in the trade or business of writing. Gestrich v. Commissioner,supra.[9] But a skeleton alone cannot constitute a trade or business; there must be some flesh on the bones. It seems to us that, at a minimum, petitioners should have sought to demonstrate their profit motive by submitting evidence that petitioner husband had developed and tested particular hypotheses so that the Court would be in a position to determine the extent to which they were more than a figment of imagination. Nowhere in the record is there any evidence other than petitioners' uncorroborated general statements that a second book was ever begun, that there was actually a method to petitioner husband's investment decisions, or that the investment activity had anything whatever to do with petitioners' writing or publishing. Without such evidence, there is an insufficient foundation upon which to hold either that petitioner husband's *108 alleged research activities were sufficient to constitute a trade or business in their own right or that the alleged second book had sufficient reality to constitute a trade or business of which these activities were a part. The absence of such a foundation negates any bona profit objective, irrespective of the credibility of petitioner husband's general testimony. We are left with the fact that petitioners were engaged only in the trade or business of marketing petitioner husband's book and possibly publishing generally. [10] This brings us to the specific disputed deductions, the largest of which are the claimed depreciation and maintenance deductions for petitioners' alleged home office. As noted earlier (see supra note 4), section 280A limits these deductions to expenses allocable to portions of the house "exclusively used on a regular basis" as the principal place of business for petitioners' trade or business. [11] As deciding the number of rooms in the house dedicated *109 exclusively to marketing and publishing would be impossible from the vague evidence in the record, [12] and as respondent has conceded that petitioners are entitled to depreciaton and maintenance deductions to a limited extent [13] based on 10-percent use in their trade or business, we hold that petitioners are entitled to no more than has been allowed by respondent for home office expenses. [14]
*110 The automobile expenses claimed by petitioners are not limited by section 280A but fall under sections 162 and 212. Respondent has allowed deductions under both sections totaling $703 for 1979 and $500 for 1980.Given the paucity of proof in the record of actual automobile expenses related to petitioners' trade or business of marketing the one book by OBP -- the only alleged activity relating to this business was local transportation in driving to the post office -- these amounts seem adequate. Indeed, the allowance seems overly generous, since the record is devoid of any evidence that petitioner did not pick up personal mail at the same time. Cf. Fausner v. Commissioner,413 U.S. 838 (1973). Alleging that these expenses constituted research and experimental expenditures under section 174 does not help petitioners. While it is true that the trade or business limitation under section 174 is less stringent than that under section 162 ( Snow v. Commissioner,416 U.S. 500 (1974)), there still must be proof of a trade or business -- nascent or otherwise -- and, as stated above, petitioners have not demonstrated that their *111 alleged ocean surf activity (the only other activity in which the automobile was claimed to have been used) rose to such a level. Moreover, section 174 deals only with the option of a taxpayer to deduct currently or amortize research and development expenses and not with the underlying issue of deductibility as such. Thus, petitioners' attempt to blanket alleged travel expenses (not involving local transportation) into the research and development category must, in any event, fail because they have not satisfied the requirements of section 274(d). That section provides that such travel expenses must be substantiated by adequate records. [15] Respondent's regulations clearly indicate what is required: adequate records entail preparation and maintenance of a statement of expense "in such manner that each recording of an element of an expenditure is made at or near the time of the expenditure." Section 1.274-5(c)(2)(ii), Income Tax Regs. Further, the business *112 purpose of each expenditure must be substantiated by written statement unless it is obvious from the context. Sections 1.274-5(b)(1)(iii) and (c)(2)(ii)(b), Income Tax Regs. Petitioners' alleged substantiation consists of their answers to respondent's interrogatories -- evidently compiled years after the purported expenditures were made -- and an overall list of the business purposes "one or more" of which each trip was alleged to have. In the absence of corroborating testimony or even specific information testified to at trial by petitioners, see section 1.274-5(c)(3), Income Tax Regs, petitioners have fallen short of meeting their burden of proof regarding these travel expenses even if we had found that there was a trade or business to which they related. *113 Petitioners also claim that amounts expended by OBP to pay premiums on a group health insurance plan covering employees of OBP were ordinary and necessary business expenses. Respondent disallowed the deductions, but allowed a $150 medical deduction for 1980.Normally, health insurance is a personal expense, not deductible under section 162. Green v. Commissioner,74 T.C. 1229, 1236 (1980). However, an employer may generally deduct premiums paid for a group health plan covering his or her employees and their families. See section 162(i). The problem here is that, as far as the record herein shows, petitioner husband was both the employer and the only employee of OBP during the years in question; thus, there really was no group to be covered. Cf. Whipple Chrysler-Plymouth v. Commissioner,T.C. Memo. 1972-55. Nor can petitioners' personal health insurance, absent a showing that it actually related to their business, see Flett v. Commissioner,T.C. Memo. 1960-157, be converted into a business expense through the use *114 of a partnership. Respondent's treatment of these expenditures was proper. It must be noted that all of the foregoing as to depreciation and maintenance of the house, automobile expenses, and health insurance premiums applies only to the deficiencies asserted in the statutory notices of deficiency. The deficiency relating to these expenses for 1979 was alleged for the first time in respondent's amended answer. Thus, Rule 142(a) places the burden of proof as to these deficiencies on respondent. Although, for the reasons stated above, we are convinced that petitioners have not carried their burden of proof as to the OBP deductions for 1980, by the same token we are satisfied that the record herein is insufficient to enable respondent to carry his burden of proof as to his claim that the 1979 OBP deductions should be disallowed. Cf. Markle v. Commissioner,17 T.C. 1593, 1599 (1952); TennesseeConsolidated Coal Co. v. Commissioner,15 T.C. 424, 432 (1950). [16] This claim is therefore not sustained.
Petitioner further claims the investment tax credit *115 for 100 percent of the cost of an automobile, a typewriter, and a computer purchased in 1979 and a computer printer purchased in 1980. Respondent allowed the credit on 10 percent of the automobile's cost, claiming that petitioner showed no greater trade or business usage for the automobile and no business use at all for the other property. Section 48(a) defines property entitling taxpayer to the investment tax credit to include only property with respect to which depreciation or accelerated cost recovery is allowable. Sections 167 and 168 allow depreciation and accelerated cost recovery only for property used in a trade or business or held for the production of income. As noted above, petitioners have failed to demonstrate a business use for the automobile in excess of 10 percent. "Production of income" would include the securities activities, but petitioners also failed to demonstrate that the automobile was used for these purposes. As for the typewriter, printer, and computer, petitioners have not carried their burden of proof as to the business or income-producing nature of these *116 assets. Petitioners attempted no allocation among the various activities for which the assets were used, at least some of which do not qualify as business or income activities, and thus have not proven entitlement to the investment credit. See Everhart v. Commissioner,61 T.C. 328, 331 (1973). Finally, we turn to petitioners' claimed interest deduction. Petitioners allege that part of their payments to credit card companies during the years in question consisted of a fee reflecting the merchants' costs of administering credit sales, and that this is the equivalent of imputed interest and is therefore deductible. Petitioners' position is totally without merit.By its terms, a deduction for imputed interest is available only in connection with installment sales, and then only when the carrying charges of which interest is a part are separately stated but the interest charge cannot be ascertained. Section 163(b). There is not a shred of evidence that any of petitioners' purchases were made on the installment basis or that there was any separate carrying charge. *117 Consequently, petitioners' claimed interest deductions are not allowable. Ross v. Commissioner,T.C. Memo. 1964-333. Cf. section 1.163-1(c), Income Tax Regs.; Rev. Rul. 72-315, 1972-1 C.B. 49. The long and the short of the matter is that the determinations by respondent as set forth in the notices of deficiency are sustained except to the extent of respondent's concessions herein [17] and that petitioneris not liable for the additional deficiency asserted in the amended answer. To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Rules of Practice and Procedure of this Court.↩
2. Petitioners reported for 1979 a net short-term capital loss of $22,059.30 and a net long-term capital gain of $20,650.99; for 1980, petitioners reported a net short-term capital loss of $57,154.75 and a net long-term capital gain of $56,084.46. These figures are exclusive of carryovers.↩
3. During the years in issue, petitioner husband was the only employee of OBP.↩
4. Section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Section 280A, in relevant part, disallows deductions with respect to the use of a dwelling unit used as a residence, but section 280A(c)(1) excepts from this rule expenses "allocable to a portion of the dwelling unit which is exclusively used on a regular basis-- [as] the principal place of business for any trade or business of the taxpayer." We note at this point that home office expenses related to incomeproducing activities within the meaning of section 212 are not deductible unless those activities rise to the level of a trade or business. See Curphey v. Commissioner,73 T.C. 766, 772↩ (1980).
5. Respondent has conceded that the marketing of the book "Unified Planning and Budgeting in a Free Society" by OPB constituted a trade or business.↩
6. We note that the implications in the record that petitioner husband claims to have been engaged in an engineering consulting business can also be dismissed. Activities not resulting in consulting income, even if they enhance taxpayer's standing as a consultant for the future, do not evidence a business. Industrial Research Products, Inc. v. Commissioner,40 T.C. 578, 588-589↩ (1963). The fact that the nature of petitioner husband's alleged consulting work was simply a continuation of the type of work he did for the Department of the Army is not in and of itself enough to satisfy petitioners' burden of proof.
7. We note that even under the reversed holding of the Claims Court in Moller,↩ relied on by petitioners, the activities here do not constitute a business. There, taxpayers kept established office hours over 40 hours a week, kept extensive records of watched securities, and had a well-equipped office complete with a secretary.
8. See Johnson v. Commissioner,T.C. Memo. 1978-293, affd. per order (9th Cir., May 29, 1981) (attempt to take section 174↩ deductions for food, clothing, and housing based on a study of the gross national product).
9. See also Snyder v. United States,674 F.2d 1359 (10th Cir. 1982); Stern v. United States ( C.D. Cal. 1971, 27 AFTR2d 71↩-1148, 78-1 USTC par. 9375).
10. Although, as will become clear, the argument that petitioners were in the business of publishing generally adds nothing on these facts to petitioners' entitlements, we note that the record lends little support to this argument. Petitioners earned practically no publishing income, published no books, accepted no manuscripts, and apparently did nothing as publishers but pick up mail during the years in question. ↩
11. Section 280A(c)(1)(B)↩, allowing deductions for portions of the home used exclusively on a regular basis "as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business," is of no avail to petitioners. The only room to which this provision could be alleged to apply, petitioners' living room, was conceded to have been used for personal television viewing as well as meetings with authors and customers. 12. Petitioners submitted figures for total square feet of floorspace and square feet of floorspace in rooms used solely for personal purposes, subtracted the latter from the former, and arrived at an 85-percent business-use figure. This information not only ignores the "exclusive use" requirement within each room, see Gomez v. Commissioner,T.C. Memo. 1980-565↩, but does nothing to allocate alleged business use among the various businesses claimed by petitioners -- most of which have been dismissed above. 13. See infra↩ note 17. 14. We note that section 280A(c)(5), apparently overlooked by respondent, limits deductions allowable under the business use exception to the general rule of disallowance in section 280A to "the excess of-- (A) the gross income derived from such use for the taxable year, over (B) the deductions allocable to such use which are allowable under this chapter for the taxable year whether or not such unit (or portion thereof) was so used." As petitioners' gross income from their trade or business appears to have totaled $135.48 for the years in issue, respondent's concession is more than adequate. We note also that, even if we had concluded that petitioner husband was engaged in more than one business, he would not have been entitled to any further deductions because of the limitation of section 280A(c)(5). Sessions v. Commissioner,T.C. Memo. 1981-319. See also Smith v. Commissioner,56 T.C. 263, 291 n.17 (1971). With regard to petitioners' contention that the basis for depreciation of the house should be its fair market value at the time of conversion to business use, we need note only that the clear rule in section 1.167(g)-1, Income Tax Regs., that where property is so converted, "the fair market value on the date of such conversion, if less than the adjusted basis of the property at that time, is the basis for computing depreciation" (emphasis added) makes petitioners' argument about "economic benefit" to the government resulting from petitioners foregoing the tax-free profit available by selling the house interesting but unavailing. Au v. Commissioner,40 T.C. 264 (1963), affd. per curiam 330 F.2d 1008 (9th Cir. 1964), relied upon by petitioners, is clearly distinguishable in that the fair market value of the automobile at the time of conversion to business use was less than↩ its undepreciated cost. With respect to petitioners' cost, although the record contains some evidence as to improvements to the house, there is no evidence from which we can determine the cost thereof.
15. In relevant part, section 274(d) provides: "No deduction shall be allowed under section 162 or 212↩ for any traveling expense (including meals and lodging while away from home) * * * unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense * * *, (B) the time and place of the travel * * *, [and] (C) the business purpose of the expense."
16. See also Goldstein v. Commissioner,T.C. Memo. 1975-355↩.
17. In his brief and trial memorandum, respondent concedes the following: ↩
1979
1980
Depreciation -- house
$150.00
$177.48
Depreciation -- furnishings
and equipment
156.50
156.50
Maintenance -- house
553.00
378.00
Automobile (partnership)
240.00
Administrative (partnership)
240.84
66.50
Investment credit
68.00
Basis of house
30,000.00
35,496.00