Charles M. KYNE and Muryl Kyne,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civil Action No. 3485.

United States District Court
W. D. Kentucky,
at Louisville.

Aug. 21, 1958.

Judgment Sept. 10, 1958.

54

Dodd & Dodd (Allen P. Dodd) Louisville, Ky., for plaintiffs.

Paul K. Kirkpatrick, Jr., Atty., Tax Division, Department of Justice, Washington, D. C., J. Leonard Walker, U. S. Atty., Louisville, Ky., Charles M. Allen, Asst. U. S. Atty., W. D. Ky., Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

Findings of Fact and Conclusions of Law

1. Charles M. Kyne, the taxpayer, and Frank J. Shippen formed a partnership styled The Alabama Poplar Company on January 1, 1946, for the purpose of buying and selling lumber. The partnership office was located in Camp Hill, Alabama and Shippen was the managing partner.

2. On or about December 22, 1953, Shippen proposed to the taxpayer that

the partnership be dissolved as of December 31, 1953. The partners agreed to dissolve with the understanding that Shippen would continue buying and selling lumber for his own account under the name, Alabama Poplar Company.

3. Shippen proposed to taxpayer in December of 1953 that taxpayer accept for his interest in the partnership, $40,000 in cash and the balance later from the profits of Shippen's business. Taxpayer would not accept this proposition nor did the partners agree in 1953 as to how the partnership would be liquidated. They did agree, either in December of 1953 or January of 1954, that the partnership inventory would be assigned to the taxpayer and that the taxpayer would finance Shippen in his individual business.

4. The accounting records of The Alabama Poplar Company reflect that the partnership collected outstanding accounts and recorded liabilities up to and including December 31, 1953. On December 31, 1953, Shippen withdrew $6,000 from the partnership bank account with the taxpayer's approval. Although the partnership books reflect a collection on account from one of the partnership debtors, Hall-Owens, Inc., in the amount of $6,434.15, this amount had been collected by Shippen and deposited in his individual bank account. This amount was deposited to the partnership bank account in January, 1954.

5. On January 1, 1954, Shippen began doing business as, Alabama Poplar Company. He used the funds in the partnership bank account for his individual business. Around the middle of January, 1954, taxpayer made three withdrawals from the partnership account totaling $35,900. Taxpayer's withdrawals left $423 in the account which was later used by Shippen in his individual business.

6. Taxpayer's withdrawals of cash from the partnership bank account was not pursuant to any plan of liquidation previously agreed to by the partners, but Shippen was present and acquiesced to the last withdrawal.

7. On January 26, 1954, taxpayer began advancing money to Shippen upon assigned invoices, which practice taxpayer is still engaged in. Taxpayer charges Shippen $10 per invoice plus 6 per cent of the amount advanced. Taxpayer's total advances to Shippen to date are as follows:

| | |
|---|---|
| 1954 | $182,641.14 |
| 1955 | 300,552.38 |
| 1956 | 255,954.86 |
| 1957 | 255,820.22 |
| April 30, 1958 | 67,968.58 |

Shippen repays the advances as he collects from customers.

8. On March 11, 1954, Shippen sent taxpayer the partnership tax return for the year ended December 31, 1953. The partnership balance sheet set out on the last page of the return showed the following balances as of December 31, 1953.

Assets

| | |
|---|---|
| Cash | $38,972.20 |
| Inventory | 30,649.78 |
| Total assets: | $69,621.98 |

Liabilities

| | |
|---|---|
| Accounts payable | $ 576.40 |
| Accrued expenses | 4,753.63 |
| Total liabilities: | $ 5,330.03 |

Net Worth

| | |
|---|---|
| Charles M. Kyne | $75,318.40 |
| Frank J. Shippen | (11,026.45*) |
| | $69,621.98 |

*deficit

9. On March 15, 1954, taxpayer filed his Federal income tax return for the year 1953 and claimed thereon a deduction in the amount of $11,026.45 as a business bad debt.

10. The partnership liabilities were not paid by the taxpayer and he was released by the remaining unpaid firm creditors in 1955. Taxpayer and Shippen did not have an accounting, arrive at a settlement nor agree to a plan of

liquidation prior to 1954. Shippen agreed in March of 1954 that he was liable to the taxpayer.

11. If taxpayer and Shippen were to have an accounting, the accounts would appear substantially as follows:

| | Kyne | Shippen |
|---|---|---|
| Balance per balance sheet December 31, 1953 | $75,318.40 | ($11,026.45) |
| Less Cash received January, 1954 | 35,900.00 | 3,072.20 |
| | $39,418.40 | ($14,098.65) |
| Less Inventory, December 1953 or January, 1954 | 30,649.78 | – 0 – |
| | $ 8,768.62 | ($14,098.65) |
| Add Liabilities paid on assumed January 1954–1955 | – 0 – | 5,330.03 |
| | $ 8,768.62 | ($ 8,768.62) |

12. Beginning on April 16, 1954, taxpayer made the following loans to Shippen, evidenced by notes: April 16, 1954, $5,000; June 28, 1954, $2,000; December 27, 1954, $3,500; January 10, 1955, $3,500; April 30, 1955, $1,000; May 4, 1955, $3,000; June 1, 1955, $4,000. All of these loans had been repaid prior to September 26, 1955.

13. On December 31, 1953, Frank J. Shippen had a bank account in the Citizens National Bank of Milford, Indiana, with a balance of $10,836.55. Of this amount $6,434.15 was owed to the partnership and was paid thereto on January 16, 1954. On that date Shippen had other assets having a value of at least $1,882.37.

14. During the year 1954 Shippen operated the Alabama Company and another business, The Alabama Company. The net income from these two businesses amounted to $20,381.49 for the year 1954. During the years 1955 and 1956, Shippen had net losses of $21,942.81 and $12,911.30, respectively. For the year 1957 Shippen had net profits of $18,970.-31. The outlook for his business in 1958 is favorable.

15. Taxpayer has not reduced any claim against Shippen to judgment although Shippen admitted a liability to the taxpayer subsequent to March 11, 1954, arising out of the termination of the Alabama Poplar Company. Taxpayer has never consulted attorneys in regard to either establishing or realizing upon Shippen's liability. In December of 1956, taxpayer asked Shippen to make a payment for the purpose of tolling the statute of limitations. Shippen paid $126.46. On July 3, 1957, Shippen paid taxpayer $130.79. Between 1955 and 1957, Shippen purchased for his own account over $15,000 of common stocks.

 (1) The evidence failed to establish a debtor-creditor relationship between Shippen and taxpayer existing in 1953. In order for there to be a debt within the meaning of the Internal Revenue Code bad debt provisions, there must be an existing unconditional obligation of another to pay the taxpayer. Bercaw v. Commissioner of Internal Revenue, 4 Cir., 165 F.2d 521; Milton Bradley Co. v. United States, 1 Cir., 146 F.2d 541; Gilman v. Commissioner of Internal Revenue, 8 Cir., 53 F.2d 47, 80 A.L.R. 209.

Claims arising from breach of contract or unadjudicated claims do not create debtor-creditor relationships. Lewellyn v. Electric Reduction Co., 275 U.S. 243, 48 S.Ct. 63, 72 L.Ed. 262; Wadsworth Mfg. Co. v. Commissioner, 6 Cir., 44 F. 2d 762. In 1953, taxpayer had no more than an equitable claim for an accounting; such a claim does not make taxpayer a creditor. Philip H. Schaff, 46 B.T.A. 640; Charles S. Guggenheimer, 8 T.C. 789.

■ In the absence of statutory permission or express promise, or fraud, an action *ex contractu* at law as distinguished from an action in equity is not maintainable between partners with respect to partnership transactions, unless there has been an accounting or settlement. Knapp v. First National Bank & Trust Co., 10 Cir., 154 F.2d 395; Burnett's Adm'x v. Farmers' Nat. Bank, 243 Ky. 760, 49 S.W.2d 1033; Moody v. Headrick, 247 Ala. 455, 25 So.2d 137; Hunter v. Parkman, 254 Ala. 494, 48 So. 2d 878. The partnership balance sheet is not an accounting between the partners, it is an accounting between the partnership and the partners. A final accounting between the partners upon which the law will imply a promise to pay is an accounting whereby mutual balances are struck. See Sayer v. Mac-Kinnon, 151 Wash. 538, 276 P. 880, holding that partnership income tax return could not be made the basis of an account stated. Such an accounting must necessarily await either the liquidation of the partnership liabilities and disposition of the partnership assets or else be based upon an agreement in regard thereto. See Lindsey v. Reeves, 251 Ala. 400, 37 So.2d 501; Megert v. Barnes, Tex.Civ. App., 259 S.W. 774.

■ No debt could exist between taxpayer and Shippen until there had been an accounting or settlement or until Shippen made an enforceable unconditional promise to pay a sum certain to the taxpayer. None of these occurred in 1953, consequently no debt existed between taxpayer and Shippen in 1953, and

could not thus become worthless in that year.

■ (2) Taxpayer has failed to prove that Shippen's debts became totally worthless in 1953. The evidence fails to disclose any serious effort by the taxpayer to establish and collect his claim from Shippen. Shippen had assets on December 31, 1953 worth at least $6,284.-77 in addition to a going business which netted some $20,000 in 1954. The evidence showed that instead of the taxpayer attempting to collect from Shippen, taxpayer has been constantly advancing money to assist Shippen in his business. While taxpayer may not have wished to take steps to enforce contribution from Shippen for fear of jeopardizing the collection of other credits from Shippen, such does not prove the total worthlessness of Shippen's obligations.

■ (3) Taxpayer's theory of the case is self-defeating in that taxpayer is contending that his claim against Shippen was worthless when it came into existence. Sections 23(k) (1) and 23(k) (4) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(k) (1, 4), authorizes deductions for debts which become worthless. Obligations which are worthless at their inception are not deductible under the bad debt provisions. Eckert v. Burnet, 283 U.S. 140, 51 S.Ct. 373, 75 L. Ed. 911; Kinkead v. Commissioner, 3 Cir., 71 F.2d 522. Thus even if taxpayer's claim for an accounting against Shippen had been reduced to a legal liability on December 31, 1953, taxpayer could not deduct it as a bad debt if the liability was then worthless. Layton v. Commissioner, decided November 19, 1952 (1952 P–H T.C. Memorandum Decisions, par. 52, 330).

■ (4) If Shippen had become indebted to the taxpayer in 1953 as a result of the termination of the partnership and if the debt had then become worthless in 1953, the debt would be a nonbusiness rather than a business bad debt. To qualify as a business bad debt under the Internal Revenue Code of 1939, a debt must be proximately related to the

58

taxpayer's trade or business when the debt becomes worthless, regardless of its character when created. Treasury Regulations 118, Section 39 23(k)-6(B). Since taxpayer predicates his claim of debt upon the termination of the partnership and taxpayer's withdrawal from the lumber business, any debt owed to taxpayer arising out of the partnership could only become worthless at a time when taxpayer was no longer in the lumber business.

### Judgment.

The above entitled cause of action came on to be heard by the Court without the intervention of a jury, and the Court having met and filed its findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., and having ordered that judgment be entered therewith, it is hereby

Ordered and adjudged, that the plaintiff's complaint be and is hereby dismissed with cost to be taxed against the plaintiff.