JAMES M. ARRIGONI AND DELORES E. ARRIGONI, PETITIONERS
v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 693–78.    Filed February 6, 1980.

*Louis J. Moriarty* and *Bradley R. Janzen,* for the petitioners.
*Gerald W. Leland,* for the respondent.

DRENNEN, *Judge:* Respondent has determined a deficiency in
the amount of $3,579.55 in petitioners' 1974 income tax. After
concessions, the issues presented for decision are:

(1) Whether payment of certain taxes and satisfaction of a
judgment by petitioners because of an employment relationship
with their wholly owned corporations represent deductible
business bad debts pursuant to section 166, I.R.C. 1954;[1] and

(2) If the payment by petitioners is not governed by section
166, whether any amounts paid by petitioners are deductible
under section 163 as interest and/or under section 164 as taxes.

## FINDINGS OF FACT

Some of the facts have been stipulated and they are so found.
The stipulation of facts with the exhibits attached thereto are
incorporated herein by this reference.

James M. Arrigoni (Arrigoni) and Delores E. Arrigoni, the
petitioners herein, are husband and wife who resided in Saint
Paul, Minn., at the time of the filing of the petition. Petitioners

[1]All section references are to the Internal Revenue Code of 1954, as amended and in effect for the
taxable year in issue, unless otherwise noted.

filed a joint Federal income tax return on the cash method of accounting, for their 1974 taxable year.

During 1972, petitioners owned all the outstanding stock of Arrakon, Inc. (Arrakon), a Minnesota corporation which operated a nightclub called "Knights Supper Club" (Knights) located in Saint Paul, Minn. Arrakon was incorporated by petitioners and another individual in November 1970. In March of 1971, the other individual disassociated himself from the corporation leaving petitioners as sole shareholders.

At the time of its incorporation, Arrakon entered into a lease with an option to purchase Knights. On March 1, 1972, this lease and option to purchase were canceled,[2] and all the assets of Arrakon were repossessed by the owner of Knights.

Arrakon was not actively engaged in any business and was without assets since 1972; in short, Arrakon was a mere corporate shell. Arrakon failed to pay over to the United States the employee portion of FICA taxes and withholding tax for the quarters ended December 31, 1971, and March 31, 1972, in the respective amounts of $2,864.71 and $2,837.74.

During a portion of 1972, Arrigoni owned all of the outstanding stock of King James, Inc. (King James), a Minnesota corporation which had begun operating a nightclub known as King's Hide-A-Way (King's) in Maplewood, Minn., in November 1971.

King James originally leased the building and the operating assets of King's from Louis P. Gilbert (Gilbert). This lease was secured by a pledge agreement pursuant to which all the outstanding stock of King James was escrowed to secure the performance of the lease. Arrigoni's ownership interest in King James was terminated in November 1972 when, after default on the lease, the escrowed stock was transferred[3] to Gilbert pursuant to the pledge agreement. Subsequent to foreclosure, Gilbert, being the only shareholder, held a meeting, declared himself president of King James, and assumed complete control of the corporation. Arrigoni was never formally informed of this action.

King James, like Arrakon, is still legally in existence but has

---

[2]No evidence was offered as to the reason for the cancellation; we assume it was for failure to pay rent as it became due.

[3]There is some question as to the exact time of actual transfer of the stock certificates. It is clear, however, that petitioners' ownership interest in King James was terminated in November 1972.

not actively conducted any business since December 31, 1972, and was without assets throughout 1973 and 1974.

King James failed to pay over to the United States the employee portion of FICA taxes and withholding tax for the quarters ended December 31, 1971, March 31, 1972, and September 30, 1972, in the respective amounts of $520.24, $1,629.63, and $745.60. Respondent determined petitioners liable for the penalty imposed by section 6672 in an amount equal to the total amount of tax which Arrakon and King James were required to pay over to the United States.

The trust fund portion of the employee taxes totaling $5,702.45, relating to the failure of Arrakon to pay these taxes over to the United States, was assessed against each petitioner on September 25, 1972. Notice of Federal Tax Lien was filed with the Register of Deeds of Ramsey County, Minn., against each petitioner as a result of the liability imposed under section 6672.

The trust fund portion of the employee taxes relating to the failure of King James to pay over the tax owing the United States was assessed against each petitioner on December 24, 1973. The assessments relating to King James totaled $2,895.47.

These assessments of $5,702.45 and $2,895.47 were fully paid in 1974 when the Internal Revenue Service applied a 1973 income tax refund due petitioners against those assessments. The Internal Revenue Service notified petitioners by mailing them Form 4356, Part I (Rev. 7–71), which stated that the assessments had been paid by applying $8,773.19 of a $9,164.06 tax refund due. Of this $8,773.19 amount, $567.27[4] constituted interest owed by petitioners on these penalties.

In addition to its troubles with the United States for failure to pay over taxes owing, King James also failed to pay over to the State of Minnesota sales and withholding taxes due for the following periods:

---

[4]The parties have stipulated to the amounts assessed and the amounts paid. No explanation was offered for the discrepancy between the portion of the income tax refund withheld and the sum of the amounts assessed plus the interest component.

| Sales tax | Amount |
|---|---|
| Feb.—May, and July 1972 | $2,805.18 |
| Aug. 1972 | 578.34 |
| Oct. 1972 | 467.20 |
| Total | 3,850.72 |

| Withholding tax | |
|---|---|
| FQE— | |
| Mar. 31 and June 30, 1972 | 769.86 |
| Total | 4,620.58 |

The State of Minnesota obtained two judgments against King James and Arrigoni, individually, in the District Court of Ramsey County for the collection of the sales and withholding taxes. One judgment, entered on February 28, 1973, concerned the collection of sales tax for February through May and July of 1972. No judgment was entered with regard to the failure of King James to pay the sales tax owing for August and October 1972. The other judgment, obtained on December 11, 1972, concerned the collection of employee withholding taxes for the quarters ended March 31, 1972, and June 30, 1972.

Petitioners satisfied these judgments and also the other amounts owing to the State with regard to sales taxes for August and October 1972, in the following manner: By check negotiated through Midwest Federal of St. Paul, Minn., petitioners paid to the State the amount of $3,041.71. The State of Minnesota applied Mrs. Arrigoni's 1973 income tax refund of $2,239.48 to the outstanding balance. Both these payments were made in 1974 and satisfied Arrigoni's and King James' obligations under the judgments and also for sales taxes owing for August and October 1972 for which no judgments were entered. At least $541.07 of this amount constituted interest paid on the indebtedness of petitioners.[5]

On September 5, 1974, petitioners obtained a Satisfaction of Judgment in the amount of $175.75, discharging a judgment secured by Crisler's Sportsenter against James Arrigoni d.b.a. Knights Supper Club.

After paying these various taxes and judgments, Arrigoni, acting as president of Arrakon and King James, executed the

---

[5]We realize that the amounts paid by petitioners to the State exceed the amount owing in taxes plus interest; however, no evidence was offered to explain this discrepancy.

following demand notes payable at 6-percent interest with the petitioners being the payee of each note. Each note represented a liability which petitioners had paid, but believed to be that of the corporations:

| Date | Amount | Payor | Liability to which note relates |
|------|--------|-------|--------------------------------|
| June 18, 1974 | $2,239.48 | King James | Minnesota sales tax |
| Sept. 9, 1974 | 749.64 | King James | Minnesota withholding |
| Sept. 9, 1974 | 2,292.07 | Arrakon[6] | Minnesota sales tax |
| Sept. 14, 1974 | 5,823.84 | Arrakon | Sec. 6672 assessment |
| Sept. 14, 1974 | 2,949.35 | King James | Sec. 6672 assessment |
| Sept. 5, 1974 | 175.75 | Arrakon | Crisler's Sportsenter |

At the time these notes were drawn, neither King James nor Arrakon was actively engaged in business, the liabilities of both corporations exceeded their assets, and they were therefore insolvent. Additionally, at this time Arrigoni owned no stock in King James, and Gilbert, the sole shareholder, was not informed by Arrigoni about the execution of these notes.

No demand for payment of the notes has ever been made of King James. Legal action against neither corporation has been commenced to collect on these notes. Petitioners had no expectation of repayment at the time of execution of these notes.

On their 1974 income tax return, petitioners claimed a business bad debt deduction of $8,919.91. This represented partial amounts claimed to be owing to petitioners by King James and Arrakon and was comprised of the following amounts paid to the following:

| | |
|---|---|
| Internal Revenue Service | $5,702.45 |
| State of Minnesota | 3,041.71 |
| Crisler's Sportsenter | 175.75 |
| | 8,919.91 |

No deduction for interest paid on the taxes to the Internal Revenue Service and the State of Minnesota was claimed by petitioners on their 1974 income tax return.

By amended petition, petitioners now allege they are entitled

---

[6]Although Arrakon drew this note, it appears that this note relates to a liability of King James.

to an additional business bad debt deduction in the amount of $5,188.83,[7] claimed to be owing from King James and Arrakon, and is comprised of the following amounts and paid to the following:

| Internal Revenue Service | $2,949.35 |
|---|---|
| State of Minnesota | 2,239.48 |
| | 5,188.83 |

Alternatively, by amended petition, petitioners contend the following:

(1) If petitioners' bad debt deduction is disallowed, petitioners claim a deduction under section 164 in the amount of $5,281.19, which represents payment by petitioners of Minnesota sales and withholding taxes.

(2) If petitioners' claim for a bad debt deduction and for State tax deduction is disallowed, petitioners claim a deduction for interest paid under section 163 in the amount of $1,108.34, representing interest paid to the Internal Revenue Service and to the State of Minnesota during 1974.

Respondent disputes petitioners' contentions but concedes that petitioners are entitled to an interest deduction in the amount of $567.27, which represents interest paid to the Internal Revenue Service.

## OPINION

Petitioners were sole shareholders in two corporations, Arrakon and King James. Each corporation engaged in the supper club business. Almost all of the operating assets of each corporation were leased.

In March 1972, the lease under which Arrakon operated was canceled and all of its assets were repossessed. Since that time Arrakon, although still legally in existence, has been without assets and has conducted no business. In November of 1972, King James defaulted on its lease. Pursuant to a pledge agreement incident to the lease, all of petitioners' shares of King James were transferred to the lessor. King James has been without assets since early 1973 and has conducted no business since December 1972.

---

[7] This amount is claimed in addition to the amounts previously deducted as business bad debts on their 1974 Federal income tax return.

Arrakon failed to pay the employees' share of Federal withholding taxes totaling $5,702.45 for two calendar quarters. King James also failed to pay over the employees' share of FICA and withholding taxes totaling $2,895.47. Respondent determined petitioners to be liable under section 6672 for the failure to pay over these taxes, and in 1974 applied $8,773.19 of petitioners' 1973 tax refund in satisfaction of the section 6672 assessment.

Additionally, King James failed to pay over to the State of Minnesota employee withholding and sales taxes. The State obtained a judgment against King James and Arrigoni, individually, for a portion of the taxes owed. In 1974, the State applied a $2,239.48 income tax refund due to petitioners, in partial satisfaction of the amounts owed. Additionally, in 1974, Arrigoni fully discharged his indebtedness to the State by an additional payment of $3,041.01.

In 1974, petitioners obtained a Satisfaction of Judgment in the amount of $175.75, discharging a judgment secured by Crisler's Sportsenter against Arrigoni individually d.b.a. Knights Supper Club.

After paying these various taxes and judgments, Arrigoni, acting as president of Arrakon and King James, issued six demand notes, petitioners being the payee on each of these notes. The total amount of these notes equaled approximately the total amounts which petitioners had paid to the Internal Revenue Service, the State of Minnesota, and to Crisler's Sportsenter. These notes were withdrawn in June and September 1974. On their 1974 income tax return and by amended petition, petitioners contend that they are entitled to a business bad debt deduction for the full amounts owing on these notes. Respondent contends that no deduction is allowable as no bona fide indebtedness arose between petitioners and the corporations. Respondent further contends that no deduction is allowable in any event for payment of amounts relating to the section 6672 assessment, for to allow a deduction for these amounts would be contrary to public policy.

## Bad Debt Deductions

In support of his argument that no bona fide indebtedness arose between petitioners and the corporations, respondent makes two arguments. It is respondent's position that no legally

recognizable debt came into existence due to the insolvency of both corporations at the time of actual payment of the taxes and the judgments. Additionally, respondent asserts that there was no underlying debt owed by the corporations to petitioners since petitioners' liability for the amounts paid was primary rather than substitutional for the liability of the corporations.

Section 166(a) allows a deduction for any debt which becomes worthless during the taxable year. The regulations make it clear that only bona fide debts which become worthless qualify for the deduction. Sec. 1.166–1(c), Income Tax Regs. A bona fide debt is defined as "a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." Sec. 1.166–1(c), Income Tax Regs.

No deduction is allowable, if at the time of acquiring the debt, (1) the taxpayer had no reasonable expectation of repayment of the sums advanced, *Hoyt v. Commissioner*, 145 F.2d 634 (2d Cir. 1944); *Thompson v. Commissioner*, 22 T.C. 507 (1954); or (2) if the local law does not recognize the obligation of the alleged debtor to repay, *Hardy v. Commissioner*, 54 T.C. 1194 (1970). If either of these two circumstances exists, there can be no bona fide indebtedness for the purposes of section 166.

Respondent asserts that no "debt" can arise when the debt is worthless when acquired due to the insolvent condition of the debtor. He argues that in 1974, when petitioners were called upon to make these various payments, King James and Arrakon were sufficiently insolvent to render these debts worthless when acquired, and therefore, petitioners had no reasonable expectation that their actions would be ultimately compensated by repayment. Cf. *Markle v. Commissioner*, 17 T.C. 1593 (1952); *Thompson v. Commissioner, supra.*

We agree with respondent that, at the time of payment, any debt inuring to petitioners from the corporation was worthless when acquired. However, due to our agreement with respondent's further contention, we need not pass on the validity of his position. We do mention though, that when payment is involuntary, as the facts of this case seem to indicate, it appears to us that the proper time to focus on the existence of an expectation of repayment is at the time the obligation is entered into, rather than as respondent contends, the time of actual payment. *Hamlen v. Welch*, 116 F.2d 413 (1st Cir. 1940); *Shiman v.*

*Commissioner*, 60 F.2d 65 (2d Cir. 1932); *Martin v. Commissioner*, 38 T.C. 188 (1962); *Stamos v. Commissioner*, 22 T.C. 885 (1954).

Respondent further contends that there is no underlying indebtedness running from the corporations to petitioners, and therefore, there can be no "valid and enforceable obligation to pay a fixed or determinable sum of money." Sec. 1.166–1(c), Income Tax Regs. It is respondent's contention that the payments in question were merely payments of petitioners' personal debts. Petitioners contend that their personal payment of the liabilities in question created a corporate debt. We agree with respondent.

The facts disclose that petitioners paid the amounts in question to three separate creditors: the United States, the State of Minnesota, and Crisler's Sportsenter. We will discuss each liability separately.

### Payment of Sec. 6672 Liability

The liability imposed by section 6672 is one that is asserted in cases evidencing a "willful failure to act by the particular officer, employee, or partner charged with the duty to act, or where such person 'willfully attempts in any manner to evade or defeat any such tax or the payment thereof.'" *Smith v. Commissioner*, 34 T.C. 1100, 1105 (1960), affd. per curiam 294 F.2d 957 (5th Cir. 1961). This liability is personal to the officer, employee, or partner against whom it is asserted, and is wholly distinct from, rather than substitutional for, the liability owed by the corporation. *Bloom v. Commissioner*, 272 F.2d 215, 221 (9th Cir. 1959); *Smith v. Commissioner, supra* at 1104.

Given this interpretation of section 6672, it is clear that a contingent liability arose when Arrigoni became a responsible officer charged with the duty to withhold. This liability became fixed and personal to him upon his failure to pay over the amount withheld to the Government. We have not found, nor have petitioners cited to us, any authority which would give them a right to reimbursement for the amounts paid to the Government. Absent an express statutory or prior contractual right[8] to reimbursement, we can find no valid debt between

---

[8]See, for example, *First National Bank of Duncanville v. United States*, an unreported case (N.D. Tex. 1979, 44 AFTR 2d 79–5648, 79–2 USTC par. 9561).

petitioners and the corporations upon which to base the bad debt deduction.[9]

## Payment Relating to Minnesota
## Sales and Withholding Taxes

A reading of the applicable Minnesota statutes shows that the State may properly assert a personal liability against the officers of corporations as the persons responsible for collected but unpaid sales and withholding taxes.

With regard to withholding tax, the State makes every "employer" personally and individually liable for any sums required to be deducted which were not paid over to the State. Minn. Stat. Ann. sec. 290.92, subdiv. 6 (7)(a). The sales tax becomes a personal debt of the "person" required to file a return. Minn. Stat. Ann. sec. 297A.40.

Included in the definition of "employer" and "person" for the purposes of imposing liability for unpaid sales and withholding taxes are: Corporations, any person having control over the payment of wages (Minn. Stat. Ann. sec. 290.92, subdiv. 1 (4)), and officers of corporations who have control, supervision, or responsibility for filing returns and making payment of the amount of tax. Minn. Stat. Ann. sec. 297A.01, subdiv. 2.

It is clear that the above statutes impose a joint and several liability for unpaid sales and withholding taxes on corporations which are sellers or employers and individuals employed by them who are defined as "employees" or "persons." It is equally apparent that Arrigoni, as an officer of King James, fell within the ambit of the statutory definition of "employee" or "person."

---

[9]Additionally, even if a right to reimbursement exists, petitioners would still fail on their claim. Sec. 162(f) makes the addition to tax imposed by sec. 6672 nondeductible. *Patton v. Commissioner*, 71 T.C. 389 (1978). Since the addition to tax imposed by sec. 6672 is personal to the taxpayer, petitioners cannot invoke sec. 166 to circumvent the prohibition of a deduction under sec. 162(f). Cf. *Smith v. Commissioner*, 34 T.C. 1100 (1960), affd. per curiam 294 F.2d 957 (5th Cir. 1961). The deductibility of the payments must be treated in a manner consistent with the proper treatment of the underlying obligation. *Rude v. Commissioner*, 48 T.C. 165 (1967). This Court will not permit the taxpayer to transform a nondeductible personal obligation into a deductible corporate debt when to do so would circumvent the effectiveness of sec. 6672. But see *First National Bank of Duncanville v. United States, supra.*

We have also considered petitioners' argument that in view of *United States v. Sotelo*, 436 U.S. 268 (1978), the liability imposed by sec. 6672 cannot be considered a penalty. We find this argument unpersuasive as the Supreme Court was construing the word "penalty" in the context of debts dischargeable in bankruptcy. Clearly, this can have no controlling effect upon the meaning of "penalty" in sec. 162(f), which is directed to an entirely different problem. *Patton v. Commissioner, supra* at 390, 391. See also *Smith v. Commissioner, supra; Conley v. Commissioner*, T.C. Memo. 1977–406.

This conclusion is evidenced by the subsequent adjudication of his individual liability. When the taxes were not paid, Arrigoni became personally and individually liable for the taxes owing; in no event was his liability derived from King James. Since his liability was personal, it is incumbent upon him to show that a statutory or contractual right of reimbursement from King James existed. Absent such a right, there is no underlying obligation upon which to base a bad debt deduction. See *Motter v. Wallace*, 72 F.2d 678 (10th Cir. 1934); *Kyne v. United States*, 180 F. Supp. 53 (W.D. Ky. 1958).

Under Minnesota Statutes Annotated section 301.09, paragraph 7, and section 301.095, subdivision 1, a corporation has the power to indemnify its officers under limited circumstances. Petitioners have introduced no evidence from which we are able to ascertain if such circumstances existed. Additionally, petitioners have come forth with no evidence showing that King James ever exercised this power. Therefore, there is no statutory right which would allow petitioners to recover any amounts paid to the State.

Furthermore, we do not believe that the execution of the demand notes created a legally enforceable contractual obligation by the corporations to repay petitioners. Three notes were executed by the corporations relating to Arrigoni's liability for the failure of King James to pay over sales and withholding taxes. One note evidencing this liability was issued by Arrakon. It is clear that Arrakon had no liability for King James' failure to pay the State. This note is unenforceable as a matter of law due to want of consideration and cannot form the basis for a bad debt deduction. See Minn. Stat. Ann. sec. 336.3–408.

Additionally, we do not believe that Arrigoni had authority to execute the additional notes on behalf of King James. The evidence at trial indicates that at the time of issuance of the note, Gilbert, rather than Arrigoni, had the sole authority for their issuance. Since no authority to issue these notes existed, no enforceable obligation arose. Therefore, no deduction is allowable under section 166 for amounts paid by petitioners for State sales and withholding taxes.[10]

---

[10]In view of our conclusion that petitioners are not entitled to a bad debt deduction under sec. 166 for Federal withholding taxes and Minnesota withholding and sales taxes paid by them, we need not consider respondent's further contention that the assessments under sec. 6672 are not deductible because of public policy. See, however, *Smith v. Commissioner, supra; Conley v. Commissioner, supra.*

### Payment to Crisler's Sportsenter

Pursuant to a judgment rendered against Arrigoni individually, d.b.a. Knights Supper Club, petitioners paid Crisler's Sportsenter $175.75 in 1974. Here, again, this is a personal debt of Arrigoni. No evidence was introduced concerning the circumstances which led up to this judgment. We are therefore unable to ascertain if petitioners had any enforceable rights against Arrakon for recovery of the amounts paid to Crisler's. As we have stated previously, the absence of this right to recover is fatal to petitioners' claim. We therefore find that no valid debt arose between petitioners and Arrakon as a result of the payment of this judgment.

### Deduction for Sales Tax

Alternatively, petitioners claim they are entitled to deduct under section 164(a)(4) amounts paid to the State of Minnesota as sales taxes in 1974. Respondent does not dispute the fact that Arrigoni was personally liable for this tax nor that the tax was in fact paid by petitioners. His sole contention is that petitioners may not deduct these taxes, since the State imposes the tax on the consumer. Petitioners contend that the tax is imposed on the retailer and as such it is deductible by them. We agree with petitioners.

It is well established that in order to qualify for a deduction for taxes paid, a taxpayer must show that he not only paid the taxes in question, but that the taxes were imposed on him by the taxing authority. *Stout v. Commissioner*, 31 T.C. 1199 (1959), affd. on this issue 273 F.2d 345 (4th Cir. 1959).

Minnesota Statutes Annotated section 297A.02 imposes a sales tax on the gross receipts from sales at retail made by any "person" in the State. "Person" is defined as including directors and officers of corporations who have control, supervision, or responsibility of filing returns and making payment of the amount imposed. Minn. Stat. Ann. sec. 297A.01, subdiv. 2. The sales tax is a personal debt of the person required to file the return and every retailer is required to file a sales tax return. Minn. Stat. Ann. sec. 297A.40, subdiv. 1, and sec. 297A.27, subdiv. 2. The regulations under these sections make it clear that the

sales tax is imposed on the seller and not the consumer. Minn. Reg. Tax S & U 200.[11] And the definition above makes it clear that petitioner, as the officer of King James responsible for filing the returns and paying the tax, was the seller.

As authority for the proposition that the tax is imposed on the consumer, respondent refers to Minnesota Statutes Annotated section 297A.03, subdivision 1 and section 297A.17. Basically these sections provide that the tax shall be separately stated and, insofar as practicable, be collected from the purchaser by the seller. Additionally, these sections provide that the sales tax becomes a debt from the purchaser to the seller recoverable at law in the same manner as other debts. Although these provisions seem to place the burden of the tax on the consumer, given the clear statutory language and its interpretation by the regulations, it is apparent that the tax still remains imposed upon the retailer.[12] Cf. *Stout v. Commissioner, supra* (interpreting a similar provision of North Carolina law). We therefore find that petitioners may properly deduct $3,850.72, the amount paid to the State of Minnesota representing their liability for sales tax.

### Payment of State Withholding Tax

With respect to payments relating to State withholding tax paid by petitioners, the same rules relating to sales tax apply, i.e., the petitioners must show that the taxing authority imposed the tax on them. On this issue, the parties make the same arguments. Here we agree with respondent.

Every employer making a payment of wages is required to deduct and withhold a tax on such wages. Minn. Stat. Ann. sec. 290.92, subdiv. 2. While the employer is liable for payment of the

---

[11]Minn. Reg. Tax S & U 200 provides in part:

"The measure of the tax imposed upon the *seller* is 4% of the gross receipts of such person upon sales made at retail * * * [Emphasis added.]"

[12]As additional support for his position, respondent cites Rev. Rul. 70–89, 1970–1 C.B. 35, which holds that the Minnesota sales tax is deductible by the purchaser or consumer who pays the tax. What respondent has failed to mention to this Court is that since this ruling was issued, and before trial of this case, his position on the Minnesota sales tax has changed. In Rev. Rul. 77–465, 1977–2 C.B. 61, respondent ruled that the Minnesota sales tax is indeed imposed on the retailer and is deductible by him. Although this ruling was applied prospectively only, since there was no change in the applicable law between the issuance of the two rulings, it appears that Rev. Rul. 77–465 is a concession by respondent that his initial position was incorrect. Although we realize that respondent is generally not bound by his rulings, we do believe that respondent has a duty to cite and explain why he is taking a position contrary to his previously published position.

tax required to be deducted and withheld, the statute also provides that the employer shall not be held liable for any amount required to be deducted and withheld if the income tax is ultimately paid by the employee. Minn. Stat. Ann. sec. 290.92, subdiv. 6(7)(b). Additionally, amounts deducted and withheld are allowed as a credit to be applied against the employee's income tax and if amounts withheld by the employer exceed the amount of taxes due by the employee, then the excess is refunded to the employee. Minn. Stat. Ann. sec. 290.92, subdivs. 12 and 13.

It is clear from the above provisions that the tax is imposed on the employee's wages and the employer merely acts as collection agent for the State. Although we realize that the Minnesota statute makes the employer liable for the payment of the tax required to be deducted and withheld, upon reading the statute as a whole and particularly Minnesota Statutes Annotated section 290.92, subdivision 6(7)(b), which relieves the employer from liability if the income tax is in fact paid, we believe that the tax is imposed on the employee. Therefore, petitioners are not entitled to a deduction under section 164(a) for payment of withholding taxes.

### Interest Deduction

In addition to liability for unpaid taxes, petitioners were also liable for payment of interest on the amounts owing to the United States and the State of Minnesota. During the taxable year, petitioners paid $541.07 and $567.27, to the State of Minnesota and the Internal Revenue Service, respectively. Both the State and the Internal Revenue Service noted that the respective amounts were paid as interest. Although petitioners did not claim a deduction for interest on their 1974 income tax return, by amended petition, they now claim an interest deduction in the amount of $1,108.34, which represents amounts which were credited by the State and the Internal Revenue Service, to interest on their unpaid accounts. Respondent concedes that $567.27 paid to the Internal Revenue Service is deductible in full but contends that the $541.07 paid to the State of Minnesota is not interest paid on the indebtedness of petitioners for the purposes of section 163.

Section 163(a) allows deductions for "all interest paid or accrued within the taxable year on indebtedness." It is clear that before interest paid on indebtedness is allowable as a deduction,

the taxpayer must establish that the interest owed is on the indebtedness of the taxpayers. *Guardian Investment Corp. v. Phinney*, 253 F.2d 326 (5th Cir. 1958); *Nelson v. Commissioner*, 281 F.2d 1 (5th Cir. 1960). Interest accruing during the time a taxpayer is secondarily liable for a debt is not deductible as such when paid, but is treated as a payment of principal. Only interest accruing when the taxpayer is primarily liable on a debt is treated as "interest on indebtedness" for the purpose of section 163(a). See *Rushing v. Commissioner*, 58 T.C. 996 (1972). Thus, petitioners will only be able to deduct that portion of the interest which accrued after Arrigoni became primarily liable as the responsible officer of the corporations.

As we have previously found, the Minnesota sales and withholding tax statutes imposed joint and several liability for payment upon Arrigoni and King James. Both parties were primarily liable for payment of the taxes. The fact that the obligations were imposed jointly does not change what is a primary liability into a derivative one. Interest paid on the indebtedness of a joint obligor is deductible by the obligor who made actual payment. *Williams v. Commissioner*, 3 T.C. 200 (1944).

Since a debt arose immediately between Arrigoni and the State when the taxes due and owing were not paid, all interest paid by Arrigoni had accrued while he was primarily liable for the taxes. We therefore find that the $541.07 paid to the State of Minnesota during 1974 is deductible by petitioners under section 163.

*Decision will be entered under Rule 155.*