IVAN M. MEISSLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Meissler v. Commissioner
Docket No. 15313-79.
United States Tax Court
T.C. Memo 1982-588; 1982 Tax Ct. Memo LEXIS 161; 44 T.C.M. (CCH) 1342; T.C.M. (RIA) 82588; October 5, 1982; VACATED November 1, 1982 Anthony Joseph Pope, for the petitioner. Edith E. Siler, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency in petitioner's 1975 income tax of $3,975.04 and an addition to tax of $190.76, under section 6651(a). [1] After concessions by the parties, [2] the sole issue for decision is whether petitioner is entitled to a bad debt deduction under section 166, and, if so, whether as a business bad debt deductible in full against ordinary income, or as a nonbusiness bad debt deductible only as a short-term capital loss. *163 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner resided in Downers Grove, Illinois, at the time he filed his petition in this case. Petitioner and his wife, Rita, untimely filed a joint income tax return for the year 1975. Petitioner's wife, Rita, is not a party to this action. At the beginning of 1963, petitioner started a business in Rhode Island known as Casting Laboratories which he operated as a sole proprietorship. Casting Laboratories was in the business of making casting molds for machinery and parts. In 1964, petitioner sold a 50 percent interest in Casting Laboratories to three unrelated persons for $25,000, with an agreement that the business would then be incorporated. Pursuant to that agreement, Casting Laboratories, Inc. (the corporation), was formed in December of 1964. Sometime after the incorporation of Casting Laboratories, one of the three outside shareholders became ill and petitioner purchased his one-sixth interest in the corporation. Because of various issuings of treasury stock, petitioner's stockholdings *164 during the life of the corporation fluctuated between 34 percent and 66 2/3 percent of the outstanding stock. The corporation's 1967 income tax return signed by petitioner showed petitioner as the owner of 66 2/3 percent of the outstanding stock. During the entire existence of the corporation, petitioner was its president and a member of its board of directors. As president, petitioner's duties included sales, public relations, and ordering materials. Petitioner also worked in the shop, both performing and training others to perform the technical operations. Petitioner was employed full time by the corporation, working at least 40 hours a week. Petitioner's stated salary ranged between $200 and $300 per week, but because of the corporation's financial difficulties, he did not always receive his entire salary. For the only year as to which there is any information in the record, 1967, petitioner actually received a salary of $8,700. The corporation was unsuccessful, losing money during most of its existence. During the late 1960's, petitioner made various loans to the corporation. [3] By April of 1972, these advances totaled at least $17,779, the amount deducted on petitioner's *165 1975 return, no part of which was ever repaid by the corporation. [4]
In April of 1972, the corporation ceased business and went into receivership. By that time petitioner had developed a certain product and was developing the tooling to produce the item, but some of the other stockholders who wanted to take over the product and the tooling forced the corporation *166 into a receivership. Petitioner was unable to find another job until May of 1973. Because of various lawsuits involving the product under development, the receivership was not concluded until late 1978 or early 1979. The record does not indicate the exact nature of the litigation, the identity of the litigants, or its outcome, but it apparently involved the product or process petitioner was developing through the corporation. Petitioner could not continue with the development work on that product or process without a going business, but as a result of the litigation he retained the product or process, but the partially completed tooling was ultimately abandoned or simply disappeared. This litigation was not concluded until sometime in 1978. Then the receivership was concluded later that year or in early 1979. At that time, the receiver abandoned and destroyed the corporation's books and records pursuant to a court order. Petitioner did not file his 1975 tax return until November of 1977. In his return, petitioner claimed a deduction for a business had debt for the loans to the corporation. Respondent disallowed this deduction and asserted a deficiency. OPINION *167 Section 166[5] allows a deduction for debts which become worthless within the taxable year. In the case of a noncorporate taxpayer, such as petitioner, only business bad debts are deductible in full against ordinary income. Secs. 166(a)(1) and (d)(1)(A). Nonbusiness bad debts are deductible only as short-term capital losses.Sec. 166(d)(1)(B). Petitioner argues that his dominant motive for making these loans to his corporation was to preserve his employment as president of the corporation. He further argues that the debts became worthless in the taxable year 1975. Respondent argues that petitioner has not shown that the debts became worthless in 1975. Respondent further argues that regardless of when the debts became worthless, petitioner made the loans to the corporation to preserve his investment rather than his employment. We agree with respondent's first argument and therefore do not reach his second. *168 Generally, a bad debt is deductible only in the year in which it becomes worthless. Secs. 166(a)(1) and (d)(1)(B); Boehm v. Commissioner,326 U.S. 287 (1945); Textron, Inc. v. United States,561 F. 2d 1023, 1024 (1st Cir. 1977); Findley v. Commissioner,25 T.C. 311, 318 (1955), affd. 236 F. 2d 959 (3d Cir. 1956). Petitioner has the burden of proof to show that he is entitled to the deduction which he claims. Rule 142(a). As a part of this burden of proof, petitioner must show that the debts became worthless during the taxable year for which he claims a deduction. Boehm v. Commissioner,supra;Messer Co. v. Commissioner,57 T.C. 848, 861 (1972); Denver & Rio Grande Western Railroad Co. v. Commissioner,32 T.C. 43, 56 (1959), affd. 279 F. 2d 368, 375 (10th Cir. 1960); Redman v. Commissioner,155 F. 2d 319 (1st Cir. 1946), affg. a Memorandum Opinion of this Court. [6] Whether a debt has become worthless in a taxable year is a question *169 of fact to be determined from all the circumstances. Sec. 1.166-2(a), Income Tax Regs. Petitioner must be able to point to "identifiable events which form the basis of reasonable grounds for abandoning any hope for the future." Dallmeyer v. Commissioner,14 T.C. 1282, 1292 (1950); Messer Co. v. Commissioner,supra.[7] We hold that petitioner has failed to carry his burden of proof. The corporation went into receivership in 1972. Because of various lawsuits over the assets, the receivership was not concluded until late 1978 or early 1979, at which time the receiver destroyed all of the corporate records. Consequently, no documentary evidence remains of the corporation's assets and liabilities during this six-year period. Petitioner produced no documents evidencing the nature of the protracted litigation, which might have produced additional assets for the benefit of the corporation's creditors. *170 We know only that as a result of this litigation, petitioner retained the product or process that he had been developing for the corporation. Since the litigation did not terminate until 1978, we cannot conclude that any debt to petitioner became worthless before that date. Petitioner ascertained that his capital investment in the corporation became worthless sometime prior to 1975, a view that respondent now shares, having reversed his earlier disallowance of a capital loss carryover for the worthless stock. We find this fact of little significance though. [8] The only evidence offered on the date of worthlessness was petitioner's own testimony. "The unsupported opinion of the taxpayer alone that the debt is worthless will not usually be accepted as proof of worhtlessness." Dustin v. Commissioner,53 T.C. 491, 502 (1969), affd. 467 F. 2d 47 (9th Cir. 1972). Moreover, we found petitioner's testimony vague and confusing. Despite repeated inquiry by petitioner's counsel, respondent's counsel, and the Court itself, petitioner could not, or would not, state *171 a specific point in time when he himself decided the debt was worthless, let alone any identifiable event evidencing the purported worthlessness. He testified vaguely about having discussed the matter with his lawyer in the course of preparing his tax return for 1975. This return was due April 15, 1976, but was not filed until November of 1977, which would place the discussion, and the presumed determination of the worthlessness of the debt, sometime after 1975. [9] We recognize that the destruction of the corporation's records was in no way petitioner's fault. However, we find his vague and inconclusive testimony wholly insufficient to carry his burden of proof. Since petitioner has failed to prove that the debt became worthless in 1975, he is not entitled to the deduction under section 166. *172 Because of our decision, we need not decide whether these "loans" were bona fide debts, sec. 1.166-1(a), Income Tax Regs., based on a reasonable expectation of repayment ( Arrigoni v. Commissioner,73 T.C. 792 (1980)), whether such loans constituted true debt obligations as opposed to contributions to capital ( Dixie Dairies Corp. v. Commissioner,74 T.C. 476 (1980)), or whether petitioner's loans to his corporation were business or nonbusiness debts ( United States v. Generes,405 U.S. 93 (1972)). In his petition, petitioner asks that, if we find 1975 not to be the year in hich the debts became worthless, we then determine what year they did become worthless. This Court may make factual determinations relating to other tax years where necessary for a correct determination of the deficiency for the taxable year involved. Sec. 6214(b). [10] Such a determination here will not affect petitioner's tax liability for 1975, the only year before this Court. In any event, there simply is not enough evidence in the record *173 to determine when any debts became worthless, whether before, after, or during the year 1975. Consequently, we decline to determine whether the debt became worthless in some year other than 1975. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year 1975, unless otherwise indicated. All references to rules are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. ↩
2. The parties stipulated that the only issue remaining in dispute was the disallowance of the claimed bad debt deduction. In respondent's amended answer to amended petition filed at the trial, respondent conceded the $1,000 capital loss deduction petitioner had claimed for his stock in Casting Laboratories, Inc., that became worthless in 1973. However, the stipulation and the record are silent as to the late-filing addition under section 6651(a). The 1975 tax return was filed some 19 months late. Petitioner has the burden to establish that the untimely filing was due to reasonable cause and not due to willful neglect. Fischer v. Commissioner,50 T.C. 164, 177↩ (1968). If petitioner has not conceded or abandoned the issue, he has failed to sustain his burden of proof, and respondent's imposition of the delinquency addition must be sustained.
3. We accept petitioner's characterization of these advances as loans for ease of identification only. Petitioner's conclusory testimony that he made loans to the corporation is not determinative. The facts in the record could support a finding that petitioner's advances represented additional contributions of capital rather than loans, but we need not resolve the debt-equity issue. ↩
4. See footnote 3 above. Petitioner testified that he believed the unpaid "loans" totaled somewhere between $30,000 and $35,000. The corporation's income tax return for 1967 showed shareholder loans totaling $31,000. The corporation's income tax return for 1968 showed shareholder loans of over $22,000. We are satisfied that petitioner made advances to his corporation of at least $17,779, the amount claimed as a deduction in 1975.↩
5. Section 166, as in effect in 1975, provided in pertinent part: SEC. 166. BAD DEBTS. (a) General Rule.-- (1) Wholly Worthless Debts.--There shall be allowed as a deduction any debt which becomes worthless within the taxable year. (b) Amount of Deduction.--For purposes of subsection (a), the basis for determining the amount of the deduction for any bad debt shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. (d) Nonbusiness Debts.-- (1) General Rule.--In the case of a taxpayer other than a corporation-- (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. (2) Nonbusiness Debt Defined.--For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than-- (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. Sec. 166(d)(1)(B)↩ was amended by sec. 1402(b), Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, 1731, to substitute "9 months" for "6 months," effective for taxable years beginning in 1977, and "1 year" for "9 months," effective for taxable years beginning after December 31, 1977.
6. See also Fegan v. Commissioner,T.C. Memo. 1982-435↩. 7. See also Churukian v. Commissioner,T.C. Memo. 1980-205; Miller v. Commissioner,T.C. Memo. 1978-304↩.
8. Petitioner correctly notes that in corporate liquidations there is a fundamental difference between debt and equity. Bona fide corporate debt obligations have priority over the claims of shareholders qua shareholders to the liquidating corporation's assets. Model Business Corporation Act, Secs. 87(b), 98. ↩
9. We think it significant that petitioner claimed as a business bad debt the exact amount which, when combined with his deductions and exemptions, left him no tax due for the taxable year 1975.↩
10. Section 6214(b) provides in pertinent part: SEC. 6214. DETERMINATIONS BY TAX COURT (b) Jurisdiction over other Years and Quarters.--The Tax Court in redetermining a deficiency of income tax for any taxable year * * * shall consider such facts with relation to the taxes for other years or calendar quarters as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other year or calendar quarter has been overpaid or underpaid. See Hajos v. Commissioner,T.C. Memo. 1964-328; Boyer v. Commissioner,T.C. Memo. 1955-105↩.