CHARLES K. AND MARIE KAUFMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kaufman v. Commissioner
Docket No. 26110-93
United States Tax Court
T.C. Memo 1995-146; 1995 Tax Ct. Memo LEXIS 143; 69 T.C.M. (CCH) 2308; April 4, 1995, Filed *143 Decision will be entered for respondent. Charles K. and Marie Kaufman, pro sese. For respondent: Barbara E. Horan. DEAN
DEAN
MEMORANDUM OPINION DEAN, Special Trial Judge: This case was assigned pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined a deficiency in petitioners' 1991 Federal income tax in the amount of $ 8,277 and an accuracy-related penalty pursuant to section 6662(a) in the amount of $ 1,655. The issues for decision are: (1) Whether petitioners are entitled to a deduction for a bad debt in the amount of $ 25,711.23; (2) whether petitioners are entitled to claim a section 1244 stock loss in the amount of $ 3,231; (3) whether petitioners are entitled to claim a loss from the sale of their personal residence in the amount of $ 665; and (4) whether petitioners are subject *144 to the accuracy-related penalty due to a substantial understatement of income on their return. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in Littleton, Colorado, at the time they filed their petition. Respondent's determinations in this matter are presumed correct, and petitioners bear the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Background
On Schedule C of their 1991 joint Federal income tax return, petitioners claimed a bad debt deduction in the amount of $ 25,711.23. A supporting statement to petitioners' return states that this deduction represents worthless debts owed to Charles K. Kaufman Finance by Austrat Management. According to the supporting statement, the figure of $ 25,711.23 is composed of the following: $ 11,576.23
Bad debt loss from partnership/loan from
Charles K. Kaufman Finance to Austrat Management.
10,000.00
Bad debt loss from partnership/loan from
Charles K. Kaufman Finance to Austrat Management.
4,135.00
Bad debt loss/loan from Charles K. Kaufman
Finance to Austrat Management.
*145 The supporting statement indicates that the due date for these debts was December 31, 1991, and, despite petitioners' efforts to collect, Austrat Management did not pay thereon. Respondent disallowed petitioners' deduction of these purported bad debts for lack of substantiation. On their 1991 return, petitioners claimed a loss in the amount of $ 665 from the sale of their personal residence. Petitioners reported this loss on Form 4797, "Sale of Business Property". [2] According to petitioners, one room of the residence, as well as a portion of the garage, had been used for purposes related to their investment in a partnership. Respondent disallowed the loss for lack of substantiation. *146 On Form 4797 of their 1991 return, petitioners also reported a loss in the amount of $ 3,231 from the sale of section 1244 stock. Petitioners identify the company in which the stock was held as "Double Three". According to a document introduced at trial, Double Three, Inc. was reorganized during 1989, and is now known as the "Coral Petroleum Corporation". [3] Respondent disallowed the loss claimed by petitioners for this stock based on a lack of substantiation. Bad Debt Deduction
Section 166 provides that a deduction is allowed for any debt which becomes worthless within the taxable year. The taxpayer must demonstrate, however, the existence of a genuine debt. Andrew v. Commissioner, 54 T.C. 239, 244-245 (1970); Estate of Van Anda v. Commissioner, 12 T.C. 1158, 1162 (1949), *147 affd. per curiam 192 F.2d 391 (2d Cir. 1951); sec. 1.166-1(c), Income Tax Regs. The debt must be valid and enforceable. See sec. 1.166-1(c), Income Tax Regs. Furthermore, there must be a real expectation of repayment. Arrigoni v. Commissioner, 73 T.C. 792, 799 (1980); Andrew v. Commissioner, supra at 245. Other than their own self-serving testimony, petitioners have failed to produce any evidence that a debtor-creditor relationship existed between themselves and Austrat Management at any time during, or prior to, the taxable year at issue. Petitioners have not, therefore, demonstrated that they are entitled to a bad debt deduction in the amount of $ 25,711.23. Before turning to the next issue, however, we briefly address a matter raised for the first time at trial. [4]
*148 1. Deduction for the Worthlessness of a Partnership Interest
Petitioners argued for the first time at trial that they had "mislabeled" the $ 25,711.23 bad debt deduction claimed on Schedule C of their 1991 return. Petitioners state that the deduction should instead have been claimed for the worthlessness of a partnership interest. [5]
As an initial observation, petitioners presented chaotic, haphazard evidence to substantiate the claimed mislabeling of their bad debt deduction. Based upon the record as a whole, however, we understand petitioners to have loosely *149 argued: (1) They held an interest in a family partnership called "Fortune Group" during the year at issue; (2) "Fortune Group", along with an entity known as "Austrat Management Graphing", held interests in the "Magenta Minerals Exploration and Development Partnership"; (3) the "Magenta Minerals Exploration and Development Partnership" held stock in one or more of the following corporations -- "Axiom III", "Continental Trading International, Ltd.", or the "Coral Petroleum Corporation"; (4) petitioners were informed that these three companies became the target of a FBI criminal investigation during 1991; (5) petitioners were informed by a letter dated October 1, 1991, that an Order establishing a claims procedure had been entered in a civil action involving Continental Trading International, Ltd.; and (6) the interest in "Fortune Group" subsequently became worthless. [6]
*150 Were we to accept all the preceding as true, which indeed would require us to pile inference upon inference, [7] petitioners have still failed to show when their purported partnership interest became worthless. At trial, petitioners introduced a memorandum agreement between themselves, other family members, and Internal Revenue agent Tom Roginski. The memorandum sets forth petitioners' agreement to treat a loss "originating from" the Magenta Minerals Exploration and Development Partnership as a passive activity loss for the taxable years 1989 and 1990, and to prepare a conforming 1991 return. Petitioners seem to believe that this agreement substantiates the partnership's termination, and therefore the issue of worthlessness. The fact remains, however, that the memorandum is dated February 20, 1992. This would not suffice to carry petitioners' burden of establishing that any interest held in the Magenta Minerals Exploration and Development Partnership became worthless in the year at issue. To be entitled to a loss deduction under section 165, a taxpayer must demonstrate that such a loss occurred in the year claimed. See sec. 1.165-1(b), (d), Income Tax Regs. Accordingly, *151 petitioners' belatedly asserted partnership loss theory must be rejected. Section 1244 Stock Loss
Generally, a taxpayer is entitled to a capital loss for stock which becomes worthless during the taxable year. Sec. 165(g). Section 1244(a)provides an exception to this rule, however, allowing a taxpayer to treat a loss on "section 1244 stock" as an ordinary loss. Section 1244(c) defines "section 1244 stock" as stock in a domestic corporation, provided: (A) at the time such stock is issued, such corporation was a small business corporation, (B) such stock was issued *152 by such corporation for money or other property (other than stock and securities), and (C) such corporation, during the period of its 5 most recent taxable years ending before the date the loss on such stock was sustained, derived more than 50 percent of its aggregate gross receipts from sources other than royalties, rents, dividends, interest, annuities, and sales or exchanges of stocks or securities.
If a corporation has not been in existence for the 5 taxable years specified in section 1244(c)(1)(C), an appropriate adjustment is made to the measuring period by section 1244(c)(2)(A). Section 1244(c)(3)(A) states that a corporation is a "small business corporation" if: the aggregate amount of money and other property received by the corporation for stock, as a contribution to capital, and as paid-in surplus, does not exceed $ 1,000,000. The determination under the preceding sentence shall be made as of the time of the issuance of the stock in question but shall include amounts received for such stock and for all stock theretofore issued.
Other than their own self-serving testimony, petitioners have produced no evidence that: (1) Coral Petroleum was a small business *153 corporation at the time the stock was issued; (2) they ever paid for or received such stock, either individually or through any partnership of which they were a member; and (3) that the corporation satisfied the gross receipts limitations of section 1244(c)(1)(C). Furthermore, even if section 1244 stock was held by or for petitioners, it is impossible to determine from the record when such stock became worthless. See sec. 1.165 -1, Income Tax Regs. Accordingly, petitioners have failed to prove that they sustained a loss that may be treated as an ordinary loss under section 1244 for the year at issue. Respondent's determination with respect to this issue is therefore sustained. Sale of Personal Residence
Generally, a loss incurred on the sale of a personal residence is not deductible. Sec. 1.165 -9(a), Income Tax Regs. An exception is provided, however, in the case of a personal residence converted to income producing purposes prior to sale. Sec. 1.165-9(b). Petitioners produced no evidence, other than their own self-serving testimony, that any portion of their residence was used for business purposes prior to its sale in 1991. Petitioners have failed, therefore, to *154 demonstrate that they are entitled to a loss in the amount of $ 665 for the taxable year at issue. Accordingly, respondent's determination is sustained. Section 6662 Penalty
Respondent determined that the entire deficiency in petitioner's income tax for the taxable year 1991 was due to a substantial understatement of income tax. Accordingly, respondent determined an addition to tax under section 6662(a) in the amount of $ 1,655. Section 6662(a) imposes an accuracy-related penalty equal to 20 percent of the portion of an underpayment that is attributable to a substantial understatement of tax. An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6662(d)(1). An understatement is reduced, however, to the extent it is: (1) Based on substantial authority, or (2) adequately disclosed in the return or in a statement attached to the return. Sec. 6662(d)(2)(B). At trial, petitioners did not address respondent's determination of the accuracy-related penalty, and failed to show that they fell within the exceptions stated in section 6662(d)(2)(B). Therefore, petitioners have not met their burden *155 of proof on this issue, and respondent's determination of a substantial understatement of income is sustained. To reflect the foregoing, Decision will be entered for respondent
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 1991. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. A supporting statement to petitioners' 1991 return allocates the selling price of the residence as follows: Selling Price
Expense of Sale
Basis of Home
Form 2119 at 90%:
$ 78,165
$ 3,600
$ 80,550
Form 4797 at 10%:
8,685
400
8,950
$ 86,850
$ 4,000
$ 89,500
Petitioners offered no testimony regarding their method for allocating these items of basis, income and expense. Petitioners computed their claimed loss of $ 665 by adding the Form 4797 prorated expense of sale and basis of home, and subtracting therefrom the Form 4797 prorated selling price (i.e., $ 400 + 8,950 - 8,685 = $ 665).↩
3. As Double Three, Inc., changed its name to Coral Petroleum Corporation in April of 1990, it is not clear why petitioners listed the stock as "Double Three" on their Form 4797.↩
4. As a general principle, we will not consider issues that are raised for the first time at trial or on brief. Foil v. Commissioner, 92 T.C. 376, 418 (1989), affd. 920 F.2d 1196 (5th Cir. 1990); Markwardt v. Commissioner, 64 T.C. 989, 997↩ (1975). We make an exception in this case, however, in favor of a complete discussion of all issues raised by the parties.
5. We note that the Court has previously allowed a deduction under sec. 165 for the worthlessness of a partnership interest. See Tejon Ranch Co. v. Commissioner, T.C. Memo. 1985-207. A loss of this type is deductible in the year sustained, but must be evidenced by closed and completed transactions, fixed by identifiable events, which show the year in which such loss was sustained. Sec. 1.165-1(b), (d), Income Tax Regs.↩
6. We note that this was one of three related cases in which petitioners argued, with varying degrees of clarity, that they were entitled to a deduction for a worthless interest in a "family" partnership. See Bentley v. Commissioner, T.C. Memo. 1995-144; Cardosi v. Commissioner, T.C. Memo. 1995-145. This argument was not raised in a fourth related case, Cardosi v. Commissioner, T.C. Memo. 1995-147↩.
7. Petitioners produced no evidence establishing that they held interests in either "Fortune Group" or the Magenta Minerals Exploration and Development Partnership, and in general, failed to demonstrate any credibility on this issue. Furthermore, petitioners have failed to explain how arguments regarding this recharacterization could be reconciled with contradictory declarations made in the supporting statement attached to their return.↩